[Civ. No. 564. First Appellate District.—November 24, 1908.]

CHARLES D. TAYLOR, Respondent, v. MARSDEN MAN- SON, HERBERT L. SCHMITZ, MICHAEL CASEY, THOMAS P. WOODWARD, THE UNITED STATES FIDELITY AND GUARANTY COMPANY, and THE EMPIRE STATE SURETY COMPANY, Appellants.

Negligence—Defective Sidewalk at Intersection of Streets—Curb— Fall and Injury of Plaintiff—Action Against Public Officials —Burden of Proof.—In an action against the members of the board of public works and the sureties on their official bonds, for injuries alleged to be caused by a defective sidewalk adjoining the round- ing of the curb, at the intersection of two streets, the burden of proof is upon the plaintiff to show clearly that the fall and in- jury was proximately caused by a dangerous defect in the sidewalk and not merely from stepping off the curb into the street.

Id.—Liability of Members of Board of Public Works—Duty must be Plain and Certain.—The members of the board of public works are public officers, whose duties are prescribed by law, and it is only when their duty is plain and certain that they can be held liable for failure to perform it.

Id.—Discretionary Action—Lack of Means for Performance.— When the action of public officers is discretionary, or when they lack the means of performing it at the public expense, they are not liable, nor are the sureties on their official bonds liable for their

lack of performance.  No public officer is required to furnish his own funds to perform acts required to be performed at the public expense.

ID.—CONSTRUCTION OF SAN FRANCISCO CHARTER—FAILURE TO REPAIR DEFECT—FAILURE TO CONSTRUCT.—The provision in the San Francisco charter excluding the city from liability for the defective condition of any sidewalk, and making the person or persons on whom the law may have imposed the obligation to repair such defect in the sidewalk, and the officer or officers through whose official negligence such defect remains unimpaired, jointly and severally liable to the party injured for damages sustained, does not clearly apply to the case of the original failure to construct a sidewalk closing the corners of two streets.

ID.—NONLIABILITY FOR DEFECT—ABSENCE OF FUNDS.—Conceding without deciding, that the original failure to construct that portion of the sidewalk was a defect therein, yet the members of the board of public works cannot be held liable therefor, when it is clear that they had no funds in their possession or under their control with which to complete the construction of that portion of the sidewalk.

ID.—ABSENCE OF NEGLIGENCE IN APPLICATION FOR FUNDS.—*Held,* that under the directory provisions of the San Francisco charter, there was no negligence on the part of the board of public works in applying for funds with which to repair defective sidewalks, for the year in which the injury was sustained, it appearing that such application was made before the budget for that year was fixed by the board of supervisors and was refused by them. It was not necessary that the application should specify each defective sidewalk.

ID.—PORTION OF SIDEWALK PART OF STREET—PROPERTY OWNERS NOT LIABLE—BOARD OF PUBLIC WORKS NOT NEGLIGENT.—That part of the sidewalk which borders on the curb at the intersection of two streets is a part of the public street; and since no property owner has any frontage thereon, none are liable for its construction or repair.  There cannot be any negligence on the part of the board of public works, in failing to compel any property owner to construct or repair that part of the sidewalk.

ID.—REQUESTED INSTRUCTIONS IMPROPERLY REFUSED—DUTY OF BOARD— ORDINARY PERSONS NOT ENDANGERED—REASONABLY SAFE CONDITION.—The court improperly refused requested instructions on the part of the defendants that it was the duty of the board of public works to repair only such sidewalks as were so out of repair as to endanger persons passing thereon; that, if the sidewalk was not so out of repair when plaintiff was injured as to endanger persons in ordinary health and strength, and with the ordinary control of their muscles and faculties while passing thereon, the jury must find for defendants; and that if the sidewalk where plaintiff was hurt

was in a reasonably safe condition, they must find for the defendants.

ID.—MATTER OF COMMON KNOWLEDGE—IRREGULARITIES IN SIDEWALKS.—It is matter of common knowledge that no sidewalk is perfect, and that certain irregularities and inequalities in the surface of sidewalks exist in all cities, and that there is usually a drop of several inches from the curb to the street.

ID.—MODE OF DETERMINING LIABILITY—QUESTIONS OF FACT AND LAW.—Whether in any case the municipal officers have done their duty must be determined by what they knew about it before and not after the accident. When the defect is such that prudent men may reasonably differ as to whether the accident should have been anticipated, the question is generally one of fact for the jury; but when it is so slight that prudent men could not reasonably anticipate danger from its existence, though an accident happens which could have been guarded against by extraordinary foresight, the question of the defendant's responsibility is one of law.

ID.—UNCERTAINTY OF EVIDENCE AS TO CAUSE OF FALL—ERROR IN REFUSING REQUEST.—The evidence being uncertain as to the cause of the fall, and there being evidence from which the jury might logically conclude that the injury to plaintiff resulted from a fall from the curb into the street, it was error to refuse a requested instruction that if the jury find from the evidence that plaintiff was not injured by reason of any sidewalk being out of repair, they should find for the defendants.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Lloyd S. Ackerman, Stratton & Kaufman, Finch & Melsted, and Devoto & Richardson, for Appellants.

Ray P. Saffold, for Respondent.

COOPER, P. J.—This action was brought against the defendants Manson, Schmitz, Woodward and Casey, members of and constituting the board of public works of the city and county of San Francisco, and against the other defendants as sureties upon their official bonds, to recover damages for personal injuries sustained by plaintiff by falling off a sidewalk in the city and county of San Francisco, alleged to have been in a defective condition and dangerous to the traveling

public. The jury returned a verdict for the plaintiff, upon which judgment was entered, and this appeal is from the judgment and an order denying the motion of the defendants for a new trial.

It appears from the record that between 8 and 9 o'clock on the evening of April 27, 1904, the plaintiff, then about seventy-one years of age, accompanied by his son, T. K. Taylor, while traveling on the sidewalk on the south side of Fourteenth street going west toward Minna street, fell, and sustained a severe fracture of the right hip, and was in consequence for a long time confined in a hospital under the care of physicians. The position can be better understood by reference to the following diagram:

(X) Shows place where injury occurred and place where sidewalk is alleged to have been defective.

The sidewalk on Fourteenth street was of artificial stone or concrete, and ended on the property line where Minna street intersects Fourteenth street, so that in the triangular space in which the letter X appears there had been no sidewalk laid, but the curb ran in a segment of an approximate circle around this triangular portion upon which no sidewalk had been laid. The area of the sidewalk marked with the letter X had never been paved, nor a sidewalk of any kind laid thereon, but consisted of the sandy soil of which the earth

was formed in the vicinity. The sidewalk on Minna street had been paved with cement, and the pavement ended on the property line where Fourteenth street intersects Minna street. The curbstone had been placed in a circle from the northwest corner of the paved sidewalk on Fourteenth street to the northwest corner of the paved sidewalk on Minna street. The evidence entirely fails to show the width of the sidewalk on either Fourteenth or Minna streets, or the area in any manner of the place marked X on the diagram, or the elevation of the curb above the floor level of the street. The testimony of plaintiff's witnesses as to the depth or depression of the uncemented portion of the sidewalk below the edges of the pavement and the curb varied, and the surface of such triangular portion was variously stated as from one and one-fourth to four or five inches below the sidewalk. The son of plaintiff, whose testimony may probably be considered to be as favorable to plaintiff as the facts would justify, testified: "I should say the depression in the sidewalk was about four inches; it was a level place, and there hadn't been any pavement put in there; just a sandy bottom, a level hole the width of the sidewalk." Other witnesses testified that water would stand in this depression or sandy part of the sidewalk during rainy weather, and that there was a board in or across it that had partly sunk in the sand. It had been in this condition for many years, and there is no evidence that anyone was ever injured there before. It was incumbent on plaintiff to prove that the fall and the injury he received were proximately caused by a dangerous defect in the sidewalk. As to whether the plaintiff fell by stumbling when he reached the end of the cement sidewalk on Fourteenth street, or when he stepped off the curb into the street, is not at all clear from the testimony. Plaintiff's son, who was the only person present besides plaintiff at the time of the accident, testified that plaintiff stepped into the pavement or hole and stumbled and fell; but he also testified in other parts of his testimony that plaintiff "fell over into Fourteenth street that was over the curb. He stepped off the sidewalk . . . he stepped off the edge of the sidewalk into the hole. He fell on the curbing and right over into the street. When I picked him up he was lying right in the street. It was very dark. I didn't see whether he struck the curb or went right over it. I don't know what he did strike; it was done so quickly I

could not see." The plaintiff testified: "Just as I got to the corner I stepped off and felt myself going, and I went down, and in trying to recover myself I pitched out toward the street and struck on my right side, and as near as I can remember there were cobblestones. I stepped into the hole. I stepped off at Fourteenth street down as Minna street crosses. As Minna street crosses I stepped right off the corner. . . . I cannot say whether the hole was inside or outside the curb because I did not see it."

Plaintiff relied upon proof of the injury as above stated, and proof of the official position of defendants as members of the board of public works, and the due execution of the official bonds by the other defendants, without any attempt to prove affirmatively any act of negligence by defendants or either of them. He alleged in his complaint that the sidewalk was "in a dangerous and defective condition, unfit and unsuited for the passage of pedestrians thereon"; that the defendants, as such members of the board of public works, knew of such dangerous and defective condition, and thereafter "wholly refused and failed to repair or reconstruct said sidewalk." Without discussing the question as to whether or not the evidence is sufficient to show that the injury was caused by the alleged defect in the sidewalk, we will proceed to a consideration of the question as to the legal liability of the defendants.

At common law no action would lie for an injury caused by a failure to repair a highway. (Whitaker's Smith on Negligence, 108, and cases cited; Shearman & Redfield on Negligence, 5th ed., sec. 337.) In many of the United States municipal corporations and counties are liable in such case; while in others road overseers, superintendents of streets or boards of public works are liable for negligence in failing to keep the roads or streets in repair, as the case may be. It is under the latter class that the present action is brought. As the members of the board are public officers, with their duties prescribed by law, and as the other defendants are sureties on their official bonds, they can only be held for nonfeasance as to some act or duty required of the board by reason of their office, or for the negligent performance of some act or duty where the act or duty is plain. It is only where the duty is plain and certain, and such duty is negligently performed or not performed at all, that the officer is

held liable to a private individual. If the act is a matter of discretion, or the officer has not the means or ability to perform it, he is not liable, nor are his sureties on his official bond. (*Doeg* v. *Cook,* 126 Cal. 213, [77 Am. St. Rep. 171, 58 Pac. 707]; Shearman & Redfield on Negligence, sec. 340, and cases cited; *Robinson* v. *Chamberlain,* 34 N. Y. 389, [90 Am. Dec. 713]; Elliott on Roads and Streets, 506.) The reason for the rule is plain. An officer is a public servant. His remuneration is often small. His implied agreement is to faithfully perform the duties required of him by law. He must perform such duties, not negligently, but with due diligence. He is not required to furnish his own funds to perform acts which are to be performed at the public expense. The charter of the city and county of San Francisco provides (section 5, article 1) that no recourse shall be had against the city for damage or loss by reason of any defective condition of any sidewalk or public street or sewer, "but in any such case the person or persons on whom the law may have imposed the obligation to repair such defect in the sidewalk, street, public highway or in the sewer, and also the officer or officers through whose official negligence such defect remains unrepaired, shall be jointly and severally liable to the party injured for the damages sustained." It is certainly not plain that the above-quoted section applies to the present case where the alleged cause of the injury was not a defect in the sidewalk, but the fact that no sidewalk had ever been built closing the corners of the sidewalks to Fourteenth and Minna streets. But for the purposes of this case, and not intimating that such is the law, it may be conceded that the fact that no sidewalk had been built was a defect in the sidewalk, and yet the defendants cannot be held liable under the law. It was shown by uncontradicted testimony that the defendants constituting the board of public works had no funds with which to repair any of the sidewalks at any of the times named in the complaint. It is not even claimed by the respondent's attorneys that they had such funds. It is well settled by all the authorities that the duty to make repairs does not exist where there are no funds with which to make them, and no legal means by which the officer can procure such funds. It is said in Shearman & Redfield on Negligence (fifth edition, section 340): "If such an officer has no funds, or inadequate funds, and no means of obtain-

ing any more, he cannot be said to be guilty of negligence in not doing the work which requires the expenditure of money. He owes no duty to anyone to undertake work than the funds in his hands will pay for; and he may exercise a discretion as to what repairs he will undertake to make with such funds as he has. He is not responsible for an error of judgment in applying deficient funds to repairs less urgently needed than others, nor for such mistakes as selecting unsuitable timber for repairing a bridge.''

The rule is stated in *Smith* v. *Wright*, 27 Barb. (N. Y.) 621, as follows: "By their means I understand the funds in their possession, not those which they might obtain at a future period. They cannot and should not be required to advance their individual moneys for public purposes. Their duties which the law compels them to perform are onerous enough without that. If our public officers would only faithfully apply what they actually receive people would have no cause to complain.''

It is not necessary to quote further from the authorities, as they all sustain the proposition as stated in the quotation from Shearman & Redfield on Negligence. (See *Barker* v. *Loomis*, 6 Hill (N. Y.), 463; *Garlinghouse* v. *Jacobs*, 29 N. Y. 297; *Hines* v. *City of Lockport*, 50 N. Y. 236; *Monk* v. *Town of New Utrecht*, 104 N. Y. 553, [11 N. E. 268].)

. Respondent claims that the board of public works were guilty of negligence because they did not properly seek an appropriation from the board of supervisors of funds with which to repair defective sidewalks. It is admitted, and the evidence shows, that the board did ask for and seek an appropriation; but it is claimed that the application was required to be made on or before the first Monday in April, whereas in fact it was not made until the latter part of May or the 1st of June; and further that the application should have specified the particular sidewalks that needed repairs. In our opinion there is no merit in either contention. The provision of the charter (article 3, chapter 1, section 1) is as follows: "On or before the first Monday of April of each year the heads of departments, boards and commissions of the city and county shall send to the supervisors an estimate in writing of the amount of expenditure, specifying in detail the objects thereof, required in their respective departments, offices, boards and commissions, including a statement of the

salaries of their subordinates.'' The provision as to time in the above-quoted section is only directory; and in cases where no injury was done, or where the supervisors had due time to consider the application, it will not be held that a board or a head of a department was guilty of negligence because the application was not made on or before a certain day. The only funds that could be available for the repair of sidewalks for the year 1904 up to the time the plaintiff was injured in April were those which might have been allowed in the budget of 1903. Defendant Schmitz was not appointed to the board of public works until the eighth day of April, 1903, and defendant Woodward was not appointed until January, 1904. It is evident that they could not have made an estimate and request for an appropriation prior to the first Monday of April, 1903. The testimony shows that in the latter part of May or early in June, 1903, before the budget had been prepared by the supervisors for the fiscal year 1903-04, the members of the board of public works appeared before the finance committee of the board of supervisors and asked for an appropriation for the repair of defective sidewalks. The board of supervisors refused, as they always had refused, to make any appropriation for the repair of defective sidewalks, holding that such expense was a charge against and should be paid by the abutting property owners. The board of supervisors having considered the matter, and refused the appropriation upon the ground that the expense should not be a charge against the city, shows that the time at which the application was made could not have made any difference, and that such application would have been refused if made at the time designated in the charter.

The appropriation sought for the repair of defective sidewalks was sufficient as to the requirement that it should ''specify in detail the objects thereof.'' The charter does not contemplate that each and every defective sidewalk of the several hundred miles of sidewalks in the city and county of San Francisco should have been specified. If such were the case it is evident that for any defect that might have become such after the request was made there would be no funds with which to repair it until an appropriation could be asked for the following year.

It is further claimed that the board was guilty of negligence in not strictly complying with the law in the endeavor to compel abutting property owners to make the needed repairs to the sidewalk. The language of the charter (section 16, chapter 2, article 6) is that when a public sidewalk or street is so out of repair as to endanger persons passing thereon, "the Board of Public Works shall require the owners or occupants of lots or portions of lots fronting on said portion of said street, avenue, alley, lane, court or place, or fronting on such portion of said sidewalk so out of repair as aforesaid, by a notice in writing, to be delivered to them or their agents, to repair forthwith said portion of said street, avenue, lane, alley, court or place to the center line thereof, or said portion of said sidewalk, in front of the property of which he is the owner or tenant or occupant." It is difficult to conceive in this case how any private person could be the owner of a lot or portion of a lot fronting on the particular piece of sidewalk in question. The front of a lot, by the very terms, means that part of the same which faces upon a street. This triangular piece of land was a part of the public street, to wit, a part of Fourteenth street. The owner of the corner lot bounded on the north by Fourteenth street and on the west by Minna street, owned no frontage on the triangle. Such lot fronted or faced the sidewalk on the north and the sidewalk on the west, and the lot had in all probability been assessed or made to pay the cost of such sidewalks. In *City Street Improvement Co.* v. *Laird,* 138 Cal. 27, [70 Pac. 916], where the court was considering the question of whether or not property can front on a crossing formed by the intersection of two streets, it said: "In order that the protest may be available, it is also necessary that the written objection should be made by the owners of a majority of the frontage of the property fronting on said proposed work or improvement. It is apparent that these provisions of the statute can have no application in the present case, for the reason that the proposed improvement is not for one block or more, and for the further reason that there can be no property fronting on the proposed work. A crossing is the intersection of two streets; and from the nature of the term can have no property fronting upon it." In *Martin* v. *Wagner,* 120 Cal. 623, [53 Pac. 167], while the court held that a triangular piece of land is liable for an assessment for the repairing of a street on which

it corners, because it had a frontage on an intersecting street, it said: "Here, as the land only cornered on Eldorado street, there could be and was no assessment for frontage on that street; but the assessment for the frontage on Fremont street was clearly authorized."

While the charter makes provision for assessments for street corners, for the expense of work done where a main street terminates in another main street, where an alley crosses a main street, where an alley terminates in another street, lane or alley, and for other conditions, we have examined in vain to find any provision as to an assessment, upon a person who is not an abutting owner, to build a sidewalk upon a triangle such as we have in this case; and counsel have pointed to no such provision.

The evidence shows that the board served and posted notices, advertised for bids in every case where a defective sidewalk was reported to them. It is not pretended that the members of the board were ever personally notified of the alleged defect. No evidence was offered as to any act of negligence on the part of either of them. We cannot hold that the board was negligent in not having the person or persons neglecting or refusing to make the repairs arrested, and thus collecting penalties for a repair fund. As before shown, there was no person owning abutting property who could be compelled to make the repairs; nor has our attention been called to any ordinance or provision of the charter that makes it the official duty of the board of public works to prosecute persons for violating the law, or to have persons arrested and prosecuted. The charter provides (chapter 2, article 6, section 18) that the board of supervisors may prescribe penalties for the neglect to make repairs, and that such penalties may be applied in the case of fines to the payment of the expense of any such repairs. It does not appear that the board of supervisors, by ordinance or otherwise, have ever prescribed that the fines or penalties shall go into a special fund for the repair of streets. In the absence of such ordinance a fine when collected would have to be paid into the general fund. The board of public works had no power to enact such ordinance, and it certainly was not guilty of negligence because it did not procure the board of supervisors to pass such an ordinance.

The defendants requested, and the court refused to give, the following instructions:

"I charge you that the duty imposed on the defendants Commissioners of Public Works was to repair only such sidewalks as were so out of repair as to endanger persons passing thereon, and that defendants are not liable for every defective sidewalk, but only for such as are so out of repair as to endanger persons passing thereon."

"I instruct you that if you find from the evidence that the sidewalk where the plaintiff has testified that he was injured was not so out of repair as to endanger persons in ordinary health and of ordinary strength, and with the ordinary control of their muscles and faculties while passing thereon, that you must find for the defendants."

"I instruct you that it is not and was not at any time the duty of any of the defendants in this action to see to it that any sidewalks should be so constructed and maintained as to be absolutely safe for the passage of all persons under all conditions, and that if the sidewalk at the point where plaintiff testified he was hurt was in a reasonably safe condition, you must find for defendants."

The above instructions stated the law correctly, and were peculiarly applicable to the evidence in this case, and the refusal to give them was error. Counsel for respondent has not pointed out any other instruction or instructions giving them or the substance of them, and we have been unable to find in the record any instruction covering them. In our opinion they were very important. As to whether the evidence, as matter of law, was sufficient to show that the sidewalk was in a dangerous and defective condition, we are not called upon to decide, in view of the refusal of the court to give the above instructions, or the substance of them, to the jury. In a case where the only defect in a sidewalk was the depression of some three or four inches of the surface of the earth between the cement sidewalk and the westerly end of the sidewalk, the jury certainly were entitled to be fully instructed as to the fact that if the sidewalk was in a reasonably safe condition for those exercising due care, the defendants were not liable. It is a matter of common knowledge that no sidewalk is perfect, and that certain irregularities and inequalities in the surface of such sidewalks exist, not only in

the city and county of San Francisco, but in all cities. In many instances a wooden or concrete pavement will terminate, and the sidewalk then consist of the surface of the street, and there will be a step of a few inches depression from the artificial sidewalk to the earth. In many cases there is, even in paved sidewalks, a drop of a few inches in the surface. In fact, the drop from the curb or outer edge of almost every sidewalk is from three to four inches, or several inches, and it is not usual for the surface to be on a level with the surface of the street. While a municipality is required to exercise vigilance in keeping its streets and sidewalks in a reasonably safe condition for public travel, it is by no means an insurer against accidents, nor can it be expected to keep the surface of its sidewalks free from all irregularities.

In *Beltz* v. *City of Yonkers*, 148 N. Y. 67, [42 N. E. 401], the evidence was held insufficient to show a dangerous defect in a sidewalk where broken stone had been removed, leaving an uncovered depression in the sidewalk of two and a half inches in depth by seven and a half inches in width, which had been there for several years. It was there said: "There are very few, if any, streets or highways that are or can be kept so absolutely safe and perfect as to preclude the possibility of accidents; and whether in any case the municipality has done its duty must be determined by the situation; what men knew about it before and not after an accident. When the defect is of such a character that reasonable and prudent men may reasonably differ as to whether an accident could or should have been reasonably anticipated from its existence or not, then the case is generally one for the jury; but when, as in this case, the defect is so slight that no careful or prudent man could reasonably anticipate any danger from its existence, but still an accident happens which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law."

To the same effect are the following: *Lane* v. *Town of Hancock*, 142 N. Y. 511, [37 N. E. 473]; *Walter* v. *Town of Hebron*, 5 App. Div. 577, [39 N. Y. Supp. 381]; *Grant* v. *Town of Enfield*, 11 App. Div. 358, [42 N. Y. Supp. 107]; *Town of Gosport* v. *Evans*, 112 Ind. 133, [2 Am. St. Rep. 164, 13 N. E. 256]; *Burns* v. *Bradford City*, 137 Pa. 361, [20 Atl. 997]; *Kornetzski* v. *Detroit City Ry.*, 94 Mich. 343, [53 N.

W. 1106] ; *Cushing* v. *Boston,* 124 Mass. 434; *Witham* v. *Portland,* 72 Me. 539.

The court also refused the following instruction asked by defendants: "I instruct you that if you find from the evidence that plaintiff was not injured by reason of any sidewalk being out of repair that you are to find for the defendants." This instruction should have been given. As before stated, the jury might very logically have concluded that the injury to plaintiff was caused by his falling off the curbing of the sidewalk into the street.

What we have said is not in conflict with what is necessarily decided in *Heath* v. *Manson et al.,* 147 Cal. 694, [82 Pac. 331]. In that case the injury was caused by plaintiff stepping into a hole in a planked sidewalk from which a plank had been removed. It appears to have been undisputed that the board of public works had not sought an appropriation for the repair of streets, and that there were abutting property owners. It was admitted that the board had not served proper notices upon such owners. What is there said as to compelling the property owners to make the repairs, or as to getting money by having them arrested and fined, was not necessary to the decision of the case on the main points.

The judgment and order are reversed.

Kerrigan, J., concurred.

Hall, J., concurred in the judgment.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 22, 1909.