Marie L. MUSGROVE, Administratrix of the
Estate of Charles W. Musgrove,
Plaintiff in Error,

v.

J. J. TOOLEY, A. C. Stapp, Terrell Hayes
and Albert Guderian, Defendants in Error.

No. 40065.

Supreme Court of Oklahoma.

April 30, 1963.

Rehearing Denied June 4, 1963.

John H. Kennedy, Oklahoma City, for
plaintiff in error.

Goode & Henson, Shawnee, for defendants in error.

BLACKBIRD, Chief Justice.

This appeal involves an action for damages on account of the personal injuries and death of plaintiff in error's intestate. Herein, plaintiff in error, hereinafter referred

to as plaintiff, seeks reversal of an order and/or judgment of the trial court, in which, among other things, said court sustained the special appearance, objection to jurisdiction, and motion to dismiss, that the defendants in error (as part of the defendants in the case) had previously filed. These parties, usually herein referred to as defendants, were then members of the Board of County Commissioners of Pottawatomie County. By said order, the court overruled a similar pleading theretofore filed by other defendants—not parties to this appeal—who, at all times material to this controversy, were members of the Board of County Commissioners of Oklahoma County.

In their briefs, all parties herein apparently agree that the pleading involved was essentially, and in effect, a general demurrer charging the "Third Amended Petition" filed by plaintiff, with failure to state facts sufficient to constitute a cause of action in her favor; and that (if the merits of the order overruling it are considered) said order may be treated as one sustaining such a demurrer.

According to plaintiff's challenged pleading, her intestate suffered the fatal injuries when the Ford automobile he was driving south on a dirt road traversing the boundary line between Oklahoma and Pottawatomie Counties (at a point between Oklahoma City's East Reno Avenue and its Southeast Fifteenth Street, or extensions thereof) fell into a "washed-out ditch running across the road * * *". The plaintiff further alleged that: "The washed-out ditch was caused by rain on or about May 25, 1957, and from that time until August 20, 1957, the date deceased was killed, no warning signs, barricades or any other such warning device were erected either on Reno Street or before the washed-out ditch in the roadway to give the traveling public warning thereof, nor was it repaired during said period."

Although plaintiff's Third Amended Petition contains allegations of negligence with reference to the duties of the respective county commissioner boards, and certain named road foremen of each of the aforenamed counties, in discharging said duties which she alleged would have prevented the accident, the allegations themselves show that such duties, on the part of either board concern only roads *within* its county, and apply to a county-line road, or a part thereof, *only after it has become a part of the road system of the county* for which a particular board of county commissioners is responsible. Nor does the plaintiff allege facts showing how warning signs erected on the east, or Pottawatomie County, side of the road, or the west, or Oklahoma County, side of it (near the scene of the accident) would have been seen by plaintiff's intestate (approaching it from the *north*) so as to have prevented him from driving on into the washed-out ditch.

The only statutory basis alleged in the pleadings for the extension, to the county-line road involved, of the duties with which the Boards of County Commissioners are charged, as to roads within their respective counties, is Title 69 O.S.1951 §§ 251 and 252. Section 251 provides as follows:

"§ 251. Maintenance and construction between counties—Division of roads All roads on county lines in this State shall be maintained and constructed by the counties adjoining; that for the purpose of carrying out the provisions of this act, it shall *be the duty* of the Board of County Commissioners of each of the counties between which such roads are located, *to divide such roads* on such county line into two parts or sections, as nearly equal as practicable, giving due consideration to the difference of cost of construing and maintaining each section, *agreeing between themselves* that each county shall undertake the work of constructing and maintaining one of the two sections." (Emphasis ours.)

On the basis of section 251, the plaintiff alleged that it was the duty of both boards of county commissioners to divide the county-line road between themselves by agree-

ment. After naming each defendant member of both Boards, the petition alleges that the said defendants "* * * negligently failed to divide said * * * road as provided by said statutes and thereby negligently failed to maintain said county-line road at the place where the accident occurred." Such failure was characterized as "negligence per se." In other allegations of her Third Amended Petition, plaintiff alleged, among other things, in substance, that the defendant county commissioners have ample funds and sufficient equipment to have repaired the road and/or to have erected signs warning of its dangerous condition, after they knew, or should have known thereof.

Under the second and third "PROPOSITIONS" advanced by plaintiff for reversal of the order and/or judgment appealed from, she urges that, in this State, the maintenance and repair of a county's roads is a ministerial duty of its Board of County Commissioners, and the failure of such a board's members to perform such duties renders it liable in damages for injuries resulting therefrom; but she cites no authority showing that either the defendant Pottawatomie County Board members, or the Oklahoma County Board members owed such a duty as to the *county-line* road in question, unless, in some manner, such duty was imposed upon either, or both, by the provisions of section 251, supra—and that a failure to perform such duties was actionable. She recognizes that the "division" and agreement said section authorizes the two Boards to make with each other has never been made.

Contrary to the allegations of the challenged pleading, defendants take the position that, if they had any such duty, it was a discretionary one, and that their failure to perform it cannot be made the basis of tort liability as attempted in the present case. In support of this position, they cite the case of South v. San Benito County, 40 Cal.App. 13, 180 P. 354, in which the plaintiff was injured when the auto, in which he was riding plunged into a creek, whose course coin-

cided, at that point, with the boundary line between San Benito and Santa Clara Counties. In said action, plaintiff sought to establish liability for his damages against San Benito County's board of supervisors, among others; and, for the purpose of showing that said defendants had the duty (which they had failed to discharge) of maintaining or replacing a bridge that had previously crossed the county-line creek at that point, he invoked the provisions of section 2713 of California's Political Code, which then read:

"* * * Bridges crossing the line between counties must be constructed by the counties into which such bridges reach, and each of the counties into which any such bridge reaches shall pay such portion of the cost of such bridge as shall have been previously agreed upon by the boards of supervisors of said counties. * * *"

There the court said, inter alia:

"The theory upon which the supervisors of Santa Clara county were sought to be held is that there was a joint duty imposed by law upon the boards of supervisors of these two counties to construct the bridge, and that their liability arises from their failure to do so before the accident occurred.

"It has been held in this state that before a public official becomes liable for a breach of duty, the duty must be plain and mandatory, the means and ability to perform it must exist, and it must be such as not to involve the exercise of any discretion on his part, either as to its performance or non-performance or as to the manner of its performance. Doeg v. Cook, 126 Cal. 213, 58 Pac. 707, 77 Am.St.Rep. 171; Taylor v. Manson, 9 Cal.App. 382, 99 Pac. 410. In Taylor v. Manson, supra, the court said:

"'As the members of the board are public officers, with their duties prescribed by law, and as the other defendants are sureties on their official

bonds, they can only be held for nonfeasance as to some act or duty required of the board by reason of their office, or for the negligent performance of some act or duty where the act or duty is plain. *It is only where the duty is plain and certain,* and such duty is negligently performed or not performed at all, that the officer is held liable to a private individual. *If the act is a matter of discretion, or the officer has not the means or ability to perform it, he is not liable nor are his sureties on his official bond.* (Citing Authorities). The reason for the rule is plain. An officer is a public servant. His remuneration is often small. His implied agreement is to faithfully perform the duties required of him by law.'

"The only statute in force imposing any duties on boards of supervisors in reference to the construction or maintenance of *county boundary line* bridges is found in section 2713, Political Code, * * *.

* * * * * *

"There is no allegation in the complaint that the two boards had come to an agreement as to the proportion of the cost to be borne by each county, * * *. *It does not appear then that the construction of this bridge was the plain, certain, and ministerial duty of the supervisors of Santa Clara county. Until an agreement has been reached by the two boards,* it would seem that *neither board has the power to expend the county moneys* for such work, and *in reaching the agreement,* provided for by the Political Code, *clearly the boards would be exercising a legislative discretion.*" (Emphasis ours).

Plaintiff has failed to demonstrate that the principles referred to in the above quoted California case should not apply in this case, similarly as they were applied there. In fact her only attempt at directly distinguishing the two cases consists of saying (in her reply brief) that said case was a "construction case", that it involved a "bridge statute", and that its decision is directly contrary to this court's previous decisions. We find in such statements no valid reason for refusing to follow the cited California precedent. Plaintiff cites no previous Oklahoma decision in which section 251, supra, was involved, and we do not think other decisions she cites are controlling. Having so concluded, and being of the opinion that plaintiff's Third Amended Petition does not state facts (as distinguished from conclusions) sufficient to state a cause of action against the defendants (Executive Committee Of American Legion v. Hardy, Okl., 300 P.2d 663, 665), and having found in none of the arguments advanced by her, an appropriate and sufficient cause for reversing the order and/or judgment of the trial court, the same is hereby affirmed.

HALLEY, V. C. J., and WELCH, DAVISON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.