[Civ. No. 4408. Third Appellate District.—November 24, 1931.]

ZAYDA HOOK, Respondent, v. CITY OF SACRAMENTO (a Municipal Corporation), Appellant.

Hugh B. Bradford, City Attorney, Jos. L. Knowles, Assistant City Attorney, and Irving D. Gibson for Appellant.

Ralph H. Lewis and George E. McCutcheon for Respondent.

Erwin P. Werner, City Attorney (Los Angeles), Nowland M. Reid, City Attorney (Long Beach), Archer Bowden, City Attorney (San Jose), and C. Stanley Wood, City Attorney (Oakland), *Amici Curiae* for Appellant.

PRESTON, P. J.—This is an appeal by defendant City of Sacramento, a municipal corporation, from a judgment entered against it upon a verdict of a jury in the sum of $5,000.

The plaintiff and respondent Zayda Hook brought this action to recover damages for personal injuries sustained by her as the result of a fall, which occurred while she was walking from the sidewalk on the north side of "K" Street, in the City of Sacramento, down the incline or apron leading to the roadway of Sixth Street. The accident occurred about 12:30 P. M. on December 6, 1929.

The action is based upon the Act of 1923, subdivision 2 (Stats. 1923, p. 675), Deering's General Laws, Act 5619, which provides: "Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property

in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition.''

Many contentions are made for a reversal of the judgment. Appellant's first contention is ''that the evidence is insufficient to show that plaintiff was injured as a result of any negligence of defendant causing the injuries or defective condition but, that at most, it shows only a trifling irregularity without negligence''.

We are unable to agree with this contention. The evidence, while not as strong or convincing as in some cases of this character, we think is legally sufficient to support the implied finding of the jury that a dangerous condition existed in the apron or approach to said sidewalk and that respondent was injured as a result of such condition.

The evidence upon all the vital issues in the case is conflicting, and as has been said in many cases, the findings of the court or jury upon conflicting evidence are conclusive on appeal and all reasonable inferences are to be indulged in support of such findings. In the case of *Treadwell* v. *Nickel,* 194 Cal. 243–260 [228 Pac. 25, 32], the rule to be followed under such circumstances by an appellate court is stated as follows: ''When a verdict is attacked for insufficiency of evidence, our power begins and ends with the inquiry whether there is substantial evidence, contradicted or uncontradicted, which in and of itself will support the conclusion reached by the jury. If, on any material point, the testimony is in conflict, it must be assumed that the jury resolved the conflict in favor of the prevailing party.''

Therefore, we will only epitomize enough of the record to show that the verdict has substantial support in the evidence. The jury undoubtedly accepted the testimony of respondent and her witness Clara Meredith as giving the

true facts as to the condition of said apron or approach to the sidewalk at the time of said accident, etc.

Plaintiff testified that, as she was walking down said incline or apron, the heel of her left shoe was caught in a hole or depression (the shape of the letter L or C), which turned her ankle and threw her violently upon the paved street, breaking her leg. She described the hole as being between 18 inches and 2 feet long and as wide as her foot and an inch to an inch and one-half deep.

Another witness, by the name of Clara Meredith, testified that on the day of the accident, she was walking behind respondent on K Street, and saw "the hole or depression" in which plaintiff caught her foot and fell. This witness described the accident and the condition of the apron or incline as follows: "Q. Where did you first see Miss Hook on that occasion? A. I should judge she was walking right ahead of me. Q. Was she walking slowly? A. She was walking just an ordinary gait, yes, slowly, was not walking fast; she was not walking very slowly, just walking a natural gait, what I would call ordinary, yes. Q. How was she clad as to shoes? Her shoes were walking shoes. Q. You just tell the jury, just describe the conditions, what happened at that corner that you saw. A. Well, she was just walking along. Walking just a little floor incline at the curb, walking down the street. Her foot slipped and she fell. Q. Would you describe to the jury the surface of the street,—that apron where she fell. Now, I mean by that, was it even or smooth or how was it? A. No, it was not even smooth. . . . I would say there were a lot of, you know, big impressions, lots of chucks taken out of the curb, little projecting rocks sticking up. Q. You had been over that street prior to that time? A. A number of times. Q. You have observed the condition before that time? A. I have. Q. Now, I am asking you how long that particular condition existed before the accident? A. Well, I should judge several months. Q. That would be as much as 4 or 5 months? A. Maybe, that I cannot say . . . for several months."

The witness was also asked to state to the jury where the holes were and her reply was: "Well, they are located all just through, little niches, I would say, little chips at places. Q. Chucked places about half an inch in depth?

A. I should judge about half an inch. Q. You knew there were a number of these on the apron? A. Yes. Q. I suppose 8 or 10 of them were there, you think there were several? A. Yes, I do. Q. Just an estimate of the depth, that is merely your judgment? A. Yes, merely my judgment. Yes, just merely my judgment, that is all.''

The defect in the apron was small, it is true, but the public is entitled to be protected against small defects, which are liable to cause injury, as well as large ones, and it was a question of fact for the jury to determine whether the holes or depressions constituted a dangerous or defective condition in said sidewalk. In *Rafferty* v. *City of Marysville*, 207 Cal. 657 [280 Pac. 118], in considering a similar case, the Supreme Court said: ''A misjudgment by a frac-. tion of an inch is sufficient to disturb the physical equilibrium.'' Again, in 13 R. C. L. 386, we find this statement: ''And the question whether a particular thing constitutes a defect or obstruction or is dangerous to travel, does not depend altogether upon its size, since small objects, as well as large ones, may render a street unsafe.''

■ The fact that respondent's foot slipped and was caught in said apron, and she fell and was injured, is some evidence tending to show that a defective and dangerous condition existed in the approach to said sidewalk. (*Sharpless* v. *Pantages*, 178 Cal. 122, 124 [172 Pac. 384]; *Brown* v. *Holwazzer*, 108 Cal. App. 483 [291 Pac. 661].)

■ No hard-and-fast rule can be laid down in cases of this kind, as to the size or character of the hole or depression in a sidewalk or street that would constitute a dangerous or defective condition within the meaning of the statute, but each case must stand upon its own particular facts, and in the case at bar, under the evidence above set forth, we are not justified in holding as a matter of law that the hole or depression in said apron did not constitute a dangerous and defective condition in the sidewalk, or that respondent, by the exercise of ordinary care for her own safety, should have seen said depression and avoided the accident.

As above stated, all these questions whether the apron or sidewalk were or were not in a reasonably safe condition, whether the respondent was or was not exercising due care in walking down said incline, were questions, under the conflicting evidence, addressed to the jury, and its verdict

here on these questions is final. (*Heath* v. *Manson*, 147 Cal. 694 [82 Pac. 331]; *Wile* v. *Los Angeles Ice & Cold Storage Co.*, 2 Cal. App. 190, 192 [83 Pac. 271]; *Taylor* v. *Manson*, 9 Cal. App. 382 [99 Pac. 410]; *Sharpless* v. *Pantages, supra; Granucci* v. *Claasen*, 204 Cal. 509 [59 A. L. R. 435, 269 Pac. 437].)

█ Appellant also contends that there is no evidence that any board or officer or appellant corporation having authority to remedy such condition, had knowledge or notice, either actual or constructive, of the dangerous and defective condition of said approach to said sidewalk. We are likewise unable to agree with this contention.

Defendant called as a witness John F. Hageman, who testified that he was foreman of maintenance of streets, acting under the superintendent of streets, and that his duties included inspecting and maintaining streets. A portion of his testimony is as follows:

"We were making inspections of all the streets and approaches to sidewalks practically every month. Q. Was that or was it not the practice prior to December, 1929; did that condition exist prior to December, 1929, the date this accident occurred? A. Yes, sir. Q. Your answer includes reference to the approach we are speaking about at the southwest corner of Sixth and K—did you also inspect that? A. Yes, sir. Q. About once a month? A. Absolutely go over them all."

Mrs. Meredith testified that the hole or depression had existed in the same condition since September or October, 1929. The accident happened on December 6, 1929. Having made inspections each month, Hageman must have seen the hole. It is inconceivable that a man engaged in examining and inspecting streets and sidewalks would overlook a defect 18 inches to 2 feet long. Therefore, sufficient evidence was shown that appellant had actual knowledge of the existence of the dangerous and defective condition of said apron for at least two months prior to the accident.

█ Furthermore, the statute does not provide that *actual notice or actual knowledge is a prerequisite to recovery in such a case.* The existence of a conspicuous defect or dangerous condition in a sidewalk or street, which had existed for a considerable length of time, will create a presumption of constructive notice thereof. (*Dawson* v. *Tulare Union High*

*School Dist.*, 98 Cal. App. 138 [276 Pac. 424] ; *Wurzburger* v. *Nellis*, 165 Cal. 48 [130 Pac. 1052] ; *Rafferty* v. *City of Marysville, supra; Roberts* v. *Pacific Gas & Elec. Co.*, 102 Cal. App. 422–428 [283 Pac. 353].)

In *Dawson* v. *Tulare Union High School Dist., supra,* this court said: ''The statute does not provide that actual notice is a prerequisite to recovery in such a case. The long-continued existence of a defective condition may establish constructive notice thereof. (*Wurzburger* v. *Nellis,* 165 Cal. 48, 53 [130 Pac. 1052] ; 43 C. J. 1043–1057.) It may be inferred from the circumstances in evidence that the principal had constructive notice of the defective condition and he certainly had 'authority to remedy such condition'. To hold that actual notice is required in such a case would be to place a premium on indifference and neglect of duty. 'Neglect of duty cannot be made the basis of exemption from liability' (*Kramer* v. *Los Angeles,* 147 Cal. 668, 681 [82 Pac. 334, 339]).''

Therefore, the record is sufficient to show that appellant had both actual knowledge and constructive notice of a defective and dangerous condition existing in said approach or apron to the sidewalk.

We think it was also a question for the jury to say whether appellant through the persons ''having authority to remedy such condition,'' failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy the dangerous and defective condition complained of.

The jury found that this dangerous and defective condition in said apron had existed from September or October, 1929, to December 6, 1929. Appellant was not only bound to take notice of it, but, it seems to us, had ample time between these dates to make the proper repairs thereto, and, failing to do so, the jury was well warranted in finding that such failure or neglect constituted negligence.

Other points presented have been carefully examined and found without merit. A further discussion seems unnecessary.

The judgment is affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 24, 1931, and an

application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 21, 1932.

Shenk J., and Langdon, J., dissented.