[L. A. No. 15601.   In Bank.—February 20, 1936.]

HATTIE NICHOLSON, Respondent, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Thatcher J. Kemp, Deputy City Attorney, for Appellant.

Martinelli & Gardiner, Jordan L. Martinelli and Samuel W. Gardiner, as *Amici Curiae* on Behalf of Appellant.

Avery M. Blount and Marion P. Betty for Respondent.

THOMPSON, J.—This is an appeal by the defendant City of Los Angeles from a judgment awarding the plaintiff damages in the sum of $1800 for injuries sustained when she slipped and fell on a public sidewalk. The defendant Wyatt, the owner of the property, in front of which the plaintiff met with her accident, received a judgment of nonsuit and is not involved in this appeal.

The accident occurred at approximately 10 o'clock in the morning on January 19, 1934. The sidewalk on Second Avenue had cracked at one of the joints between the panels.

One block had tilted up so that there was a difference in grade at the break of not more, and possibly less, than an inch and a half. The plaintiff approached from the north, which was the high side of the break, set her heel on the edge of the break and slipped and fell, suffering the injuries complained of. The court found that this condition was dangerous and constituted a menace to pedestrians using the sidewalk; that the defendant had negligently permitted the dangerous condition to exist without repair for several months prior to January 19, 1934; that the plaintiff was exercising ordinary and reasonable care and was without knowledge of the dangerous condition of the sidewalk, and by reason of the defect stumbled and fell.

Liability is sought to be imposed upon the defendant city under the Public Liability Act of 1923 (Stats. 1923, p. 675, Deering's Gen. Laws, 1931, Act 5619), section 2 of which renders the city liable for ''injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where . . . the board, officer or person having authority to remedy such condition, *had kowledge or notice of the defective condition . . . and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous and defective condition''*. (Italics added.) This statute constitutes a modification of the rule of nonliability of municipalities for acts performed in a governmental capacity, and recovery thereunder is only possible where all the requirements conditioning the city's liability are supplied. It is not enough to show a dangerous condition of the property. ''The municipality must have had notice and have failed to exercise its opportunity to remedy the condition. The theory of the act seems to be that liability is imposed not alone for the dangerous condition, but for the failure to remedy it, upon knowledge or notice thereof. The elements of knowledge or notice are logically essential to show culpability in failure to remedy the condition, and proof of one or the other is necessary to recovery.'' (*Watson* v. *City of Alameda,* 219 Cal. 331 [26 Pac. (2d) 286].) See, also, *Crone*

v. *City of El Cajon,* 133 Cal. App. 624 [24 Pac. (2d) 846], and *Pittam* v. *City of Riverside,* 128 Cal. App. 57 [16 Pac. (2d) 768].

Assuming that the evidence will support the finding of a dangerous and defective condition by reason of the break and elevation in the concrete surface of the sidewalk, it clearly will not support the finding that "the defendant had constructive notice of the said condition of said sidewalk for several months prior to January 19, 1934, and for at least three months prior thereto". No attempt has been made to charge the city with actual notice, but respondent relies entirely upon constructive notice arising from the continued existence of this defect through a period described by plaintiff's witness as "several months". Even though it be true as said in *Rafferty* v. *City of Marysville,* 207 Cal. 657 [280 Pac. 118], and *Hook* v. *City of Sacramento,* 118 Cal. App. 547 [5 Pac. (2d) 643], that a minor defect may well be dangerous to travel, it does not, we think, by its mere existence, charge the city with constructive notice of its presence.

Constructive notice ordinarily involves, as an essential element, actual notice of facts or circumstances which are sufficient to put a prudent person on inquiry as to the existence of the fact with respect to which he is charged with constructive notice. It is so provided in our code definition. (Civ. Code, sec. 19.) In *Wilkerson* v. *Thorp,* 128 Cal. 221 [60 Pac. 679], which is illustrative of this principle, it was held that knowledge of the existence of a lease did not charge with constructive notice of unusual provisions contained therein, although it constituted constructive notice of provisions customarily contained in leases. It is there said: "Constructive notice is a knowledge of such facts, that the party possessing such knowledge is conclusively presumed to know other things besides the facts which have been proven to have come to his knowledge. The information or knowledge of facts possessed by a party must be such that he is conclusively presumed to have notice of the main fact to which the constructive notice is invoked." Consequently there must be shown, in order to charge the city with constructive notice under these principles, some element of conspicuousness or notoriety so as to put the city authorities upon inquiry as to the existence of the defect or condition and its dangerous character. It is equally clear, we think,

that where the city is charged with constructive notice on the basis of a duty to inspect, it must be made to appear that a reasonable inspection would have disclosed the defect or dangerous condition; that is, that had there been no neglect of duty there would have been actual knowledge on the part of the city officers.

Under the rule contended for by respondent the mere existence of a defect, no matter how slight or obscure, for a substantial period of time would be sufficient to charge the city with notice and render it liable for injuries received on account thereof. It is well settled that a municipality is not an insurer of its public ways and is not bound to keep them so as to preclude the possibility of injury or accident. In *Taylor* v. *Manson,* 9 Cal. App. 382, 392 [99 Pac. 410], it is said: "It is a matter of common knowledge that no sidewalk is perfect, and that certain irregularities and inequalities in the surface of such sidewalks exist, not only in the city and county of San Francisco, but in all cities. In many instances a wooden or concrete pavement will terminate, and the sidewalk then consist of the surface of the street, and there will be a step of a few inches depression from the artificial sidewalk to the earth. In many cases there is, even in paved sidewalks, a drop of a few inches in the surface. In fact, the drop from the curb or outer edge of almost every sidewalk is from three to four inches, or several inches, and it is not usual for the surface to be on a level with the surface of the street. While a municipality is required to exercise vigilance in keeping its streets and sidewalks in a reasonably safe condition for public travel, it is by no means an insurer against accidents, nor can it be expected to keep the surface of its sidewalks free from all irregularities." See, also, McQuillin on Municipal Corporations, vol. 7, p. 164, sec. 2974, and Dillon on Municipal Corporations, 5th ed., vol. IV, p. 2965, sec. 1697. The doctrine of constructive notice cannot be so applied as to effect a change in the substantive obligations of the city.

The rule as stated in the cases relied upon by the respondent is that the existence of a conspicuous defect or dangerous condition of a street or sidewalk for a considerable length of time will create a presumption of constructive notice. Consideration of the facts of those cases, however, discloses that there was in each instance a more conspicuous defect

than the one in the instant case, or there was present an additional factor upon which the constructive notice was predicated. In many there was actual notice, and hence the language with reference to constructive notice is mere *dictum*. In none was the municipality charged with constructive notice upon the basis of the mere existence of a minor defect for a period of several months. In *Boyce* v. *San Diego High School Dist.*, 215 Cal. 293 [10 Pac. (2d) 62] (pit in a corridor without a guard rail), *Bennett* v. *Kings County*, 124 Cal. App. 147 [12 Pac. (2d) 47] (bridge at a sharp angle with the highway without a guard rail, fence or warning signs), and *Dawson* v. *Tulare Union High School Dist.*, 98 Cal. App. 138 [276 Pac. 424] (piano insecurely supported on a dolly), not only was the defect or dangerous condition more conspicuous, if not obvious and apparent, but there had been prior accidents from the same cause which served to put those in charge upon inquiry as to the safety of the existing condition. In *Rafferty* v. *City of Marysville*, 207 Cal. 657 [280 Pac. 118], there was actual notice, an obvious defect in the form of a fifteen-inch step-down from curb to street, all others being less than half that height, and a presumption of inspection which should have disclosed the condition arising from the acceptance by the city of the improvement, constructed under contract with the city. In *Wurzburger* v. *Nellis*, 165 Cal. 48 [130 Pac. 1052], the defect was distinctly more conspicuous, consisting of a gully across a sidewalk. *Roberts* v. *Pacific Gas & Electric Co.*, 102 Cal. App. 422 [283 Pac. 353], and *Kramer* v. *City of Los Angeles*, 147 Cal. 668 [82 Pac. 334], did not necessitate a determination of the question of constructive notice, although both contain language to the effect that it may be predicated upon a failure to discharge the duty to inspect. In the first case a tree had fallen across a roadway, partially obstructing it, while the second involved the clogging of an outlet to a street drain shortly after a storm, the court stating that it was the duty of the city to anticipate the probability of such occurrences, that neglect of duty cannot be made the basis of exemption from liability. In *Hook* v. *City of Sacramento*, 118 Cal. App. 547 [5 Pac. (2d) 643], there was testimony that an inspection had been made during the existence of the defect found by the jury to be dangerous.

■ The plaintiff herself testified, and relies upon this testimony to show an absence of contributory negligence, that from the direction from which she approached the sidewalk appeared to be perfectly level. This testimony also tends to show that the defect was not conspicuous and might also go far toward establishing that it might have been overlooked in a reasonable inspection of the city streets. The rule as to the duty to inspect has been well stated in *Davanza* v. *City of Bridgeport,* 118 Conn. 23 [170 Atl. 484] : " 'in order to charge a municipality with implied or presumptive notice of a defect, it must be shown that, had it exercised a reasonable supervision over its streets and sidewalks, it would have discovered the condition a sufficient time before the accident to have had a reasonable opportunity to guard against injury from it. That test is . . . would it have been discovered had the municipality exercised reasonable supervision over its streets . . . in view of the whole problem with which it was confronted.' *Ritter* v. *City of Shelton,* 105 Conn. 447, 450 [135 Atl. 535, 537]. This, in common with the other elements of municipal liability for defective streets and sidewalks, contemplates consideration of all the existing circumstances, including, not only the cause and nature of the defect and the length of time it had existed, but also the location, extent, and character of the use of the walk in question, the magnitude of the problem of inspection, and remedy presented by the conditions, and the resources in men and money available to cope with the problem."

There is no evidence of any prior event which would put the city on inquiry as to the existence of a dangerous break at this point, and aside from the testimony that it had existed for several months, that it was about an inch and one-half high, and that the plaintiff thought it was caused by the root of a tree growing in the parking beside it, there is no testimony with regard to the defect itself. This, we think, is insufficient to sustain a finding that had the city fulfilled its duty of reasonable inspection and supervision of the streets of the city as a whole it would have had actual knowledge of the break. There is a complete absence of proof as to the method or period of inspection or the nature of the neighborhood in which the defect existed, or the character of the use made of the walks in this neighborhood. Because of the plaintiff's failure to bring home to the defendant city a neg-

lect of its duty of inspection or knowledge of facts which would have put it upon inquiry, the city cannot be held to have had constructive notice of the defect and the judgment must be reversed.

Judgment reversed.

Shenk, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.