Filed 8/6/13  Moore v. City of Beverly Hills CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANNE MOORE, | B239683 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC109598) |
| v. | |
| CITY OF BEVERLY HILLS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Lisa Hart Cole, Judge.  Affirmed.

Bahar │Law Office, Sarvenaz Bahar for Plaintiff and Appellant.

Law Offices of Michael R. Nebenzahl, Michael R. Nebenzahl for Defendant and Respondent.

_____

A visitor in Beverly Hills fell on a public sidewalk. She has sued the City for maintaining a dangerous condition on its property, claiming that the cause of her fall was a utility box recessed too deeply into the sidewalk. The trial court gave summary judgment to the City. We affirm. The alleged defect was trivial in size as a matter of law, and plaintiff failed to present a triable issue that inadequate lighting was an aggravating circumstance that created a substantial risk of injury to a pedestrian using due care.

## FACTS

On July 3, 2009, at around 10:35 p.m., plaintiff Anne Moore tripped and fell on a public sidewalk in front of a restaurant at 252 North Beverly Drive (the Site) in Beverly Hills (the City). Plaintiff had taken no drugs or alcohol and was strolling slowly with her daughter Rebecca Moore (Rebecca). The weather was dry and the sidewalk was free of debris, obstructions and pedestrians. Plaintiff was wearing recently purchased three-inch-high wedge sandals, which she had worn only once before. She suffered multiple fractures in her ankle and has pain and impaired mobility as a result of the fall.

A streetlight electric box with a vault cover (the Box) lies in the sidewalk at the Site. The Box is 34-3/4 inches long and 21-3/4 inches wide. Plaintiff contends that she tripped at the southeast corner of the Box. She landed on the sidewalk southeast of the Box. There is a scuff mark on the leather upper of her left shoe directly underneath where her left toes rest, but no mark on the rubber sole. Plaintiff made two steps on top of the Box before she fell. She testified that "it happened so quickly, I don't have any recollection of what happened." She was unable to specify whether her foot "hit up against something" that caused her to trip. Rather, "it felt like the thing jarred, and then down I went."

City police officer Daniel Tanner arrived at the scene of plaintiff's fall after she was taken to a hospital. He took photographs of the Site, then went to the hospital to show the photographs to plaintiff. Plaintiff confirmed that Officer Tanner "had correctly taken photographs of the area of her trip and fall incident." One of the photographs

2

depicts a ruler in the southeast corner of the Box where plaintiff believes she fell. The ruler appears to show a height differential of less than one-half inch.

Rebecca examined a photograph of the Site; she testified that the Site was "only a little brighter than that" depicted in the photograph. The Box is clearly visible in the photograph. Rebecca did not know which part of the Box her mother fell on, but indicated that she landed next to the planter at the restaurant door. Plaintiff described the Site as "very dark." She does not recall whether there were streetlights.[1]

The Box was installed in 2004, when the sidewalk was replaced during the City's refurbishment of its business district. The work was performed by a contractor. It is undisputed that the Box was flush with the sidewalk when it was installed and the work was approved by a City inspector. The parties disputed whether the Box settled into the pavement since its installation, and, if so, how much.

Owing to her injury, plaintiff did not return to the Site. Rebecca examined the Site on July 4, 2009. To estimate the depth of the Box, "all I had was my finger, so I just sort of put that against where I assumed she may have fallen just because it was raised a little. So it was probably about up to here on my finger," referring to the crease on her finger, about an inch to an inch and one-quarter. On July 14, 2009, plaintiff's counsel went to the Site and took a photograph of her hand next to the Box, holding a small spoon with lines drawn on it. Held up next to a ruler, the spoon markings indicate a differential of roughly seven-eighths of an inch.

Biomechanical engineer John Perry inspected the Site in August 2011. He measured the differential between the sidewalk grade and the top of the Box as one-quarter inch at the south end, and between one-half and three-quarters inch along the

---

[1] Plaintiff cites pages 57 to 59 of her deposition as evidence that there was construction at the Site that darkened the Box. The cited deposition pages do not mention construction at the Site, and photos of the Site taken by Officer Tanner on the night of the accident show no signs of construction. During argument before the trial court, the City volunteered that there was construction "across the street," which the court correctly observed was not evidence in the record.

length of the east side. The Box "rests either at grade or level slightly below grade." Perry noted that there are no scuffing, scraping or impact marks along the sides of plaintiff's nearly new wedge sandals.

Joe Tuttle was project foreman for the company that installed the Box in 2004. The construction contract required that the street light boxes be adjusted to grade. Tuttle recalled that the Box was "flush upon completion." After plaintiff filed suit in September 2010, Tuttle went to the Site: he declared that "[u]pon inspection, three out of the four corners of the box remain flush with the sidewalk. The remaining corner has a height differential between sidewalk and cover of half an inch (0.5"). While I do not know what caused the half-inch (0.5") height differential, while inspecting the site I made note of significant settlement of the sidewalk in and around the location of the fall, and found someone, not [the original contractor] had attempted to grind down the concrete around the location where the lid and sidewalk showed the half-inch (0.5") height differential."[2]

The City maintains a database of repairs to city sidewalks, including electric box vaults. City Street Superintendent Jeff Gettler—who is responsible for logging and investigating complaints of dangerous or unsafe conditions on City sidewalks—reviewed this database and found no reports, complaints or repairs to the sidewalk at the Site. The City also maintains a database of tort claims. It is undisputed that there are no claims or lawsuits alleging a dangerous condition arising from the Box at the Site, other than plaintiff's claim.

## PROCEDURAL HISTORY

Plaintiff filed suit against the City on September 14, 2010, asserting a single cause of action for negligence due to a dangerous condition of public property arising from the installation of the Box in the sidewalk and inadequate lighting. The City moved for summary judgment. It argued that it had neither actual notice nor constructive notice of a dangerous condition; further, the alleged defect is trivial as a matter of law, and any

---

[2] The trial court sustained objections to speculative statements Tuttle made about water-blasting at the Site.

4

failure to provide more illumination did not create a dangerous condition.  Plaintiff opposed the motion, arguing that there are triable issues regarding the depth of the Box relative to the sidewalk, whether there were "aggravating circumstances," and whether the area surrounding the Box was recently altered.

The trial court granted the City's motion, finding that:  photographs of the Site "depicted the area as well lit"; plaintiff tripped on an electrical vault box that was between one-quarter and three-quarters of an inch below the sidewalk, which "is trivial as a matter of law"; no reasonable mind could conclude that the condition of the sidewalk was dangerous or that the lighting in the area as shown in the photographs was an aggravating condition; and the City lacked actual or constructive notice of any defect.  The court entered judgment in favor of the City on December 30, 2011.  This timely appeal ensued.

## DISCUSSION

### 1. Appeal and Review

The judgment is appealable.  (Code Civ. Proc., § 437c, subd. (m)(1).)  Summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (*Id.*, subd. (c); *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)  "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

Review is de novo.  (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003.)  "Summary judgment will be upheld when . . . the evidentiary submissions conclusively negate a necessary element of plaintiff's cause of action, or show that under no hypothesis is there a material issue of fact requiring the process of a trial . . . ."  (*Thompson v. Sacramento City Unified School Dist.* (2003) 107 Cal.App.4th 1352, 1360.)

## 2. Overview of Municipal Liability

A public entity is not liable for injuries, except as provided by statute. (Gov. Code, § 815;[3] *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 703.) Liability may arise for injury on public property if (1) it was in a dangerous condition at the time of the injury and (2) the injury was proximately caused by the dangerous condition, which created a reasonably foreseeable risk of the kind of injury that was incurred; further, the dangerous condition must either be created by a public employee, or the public entity must have had "actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835.) Constructive notice may exist when an "obvious" dangerous condition has existed for "a period of time" so that the public entity should have discovered it. (§ 835.2, subd. (b).)

Public property is dangerous if it "creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury" when used with due care. (§ 830, subd. (a).) There is no liability "if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (§ 830.2.) "The fact that action was taken after an injury occurred to protect against a condition of public property is not evidence that the public property was in a dangerous condition at the time of the injury." (§ 830.5, subd. (b).)

## 3. The Trivial Defect Doctrine

Trip-and-falls on public sidewalks is an oft-litigated issue. "It is a matter of common knowledge that it is impossible to maintain a sidewalk in a perfect condition.

---

[3] Unlabeled statutory references in this opinion are to the Government Code.

Minor defects are bound to exist. A municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to travel. Minor defects due to continued use, or action of the elements, or other cause, will not necessarily make the city liable for injuries caused thereby. What constitutes a minor defect is not always a mere question of fact. If the rule were otherwise the city could be held liable upon a showing of a trivial defect." (*Whiting v. City of National City* (1937) 9 Cal.2d 163, 165.)

Supreme Court rulings indicate that sidewalk height differentials of up to one and one-half inches are too trivial—as a matter of law—to trigger constructive notice that a sidewalk requires repairs. (See *Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361, 363, 367 [one and one-half inch offset between sidewalk panels not actionable]; *Whiting v. City of National City, supra,* 9 Cal.2d at pp. 164, 167 [three-quarter inch sidewalk offset not actionable]; *Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 74-75 [one-half inch offset not actionable]. By contrast, deeper holes present a triable issue of whether there is a conspicuously dangerous condition of public property. (See *Palmer v. City of Long Beach* (1948) 33 Cal.2d 134, 136-138 [sidewalk hole "at least 3 inches deep," eight or nine inches wide and 10 to 11 inches long is not so minor as to create a pure question of law]; *Laurenzi v. Vranizan* (1945) 25 Cal.2d 806, 811-812 [sidewalk hole two to two and one-half inches deep, two to six inches wide, and 12 inches long presented a jury issue on the issue of dangerousness].)

Over the years, this Court has had occasion to consider sidewalk defects. In *Balmer v. City of Beverly Hills* (1937) 22 Cal.App.2d 529, the plaintiff tripped on a sidewalk in Beverly Hills, due to a differential between an old sidewalk section that was one inch lower than a newer sidewalk it adjoined. The new sidewalk was constructed six or seven years earlier by a private contractor and accepted by the City. No one had reported it as a dangerous condition. (*Id.* at pp. 529-530.) A one-inch height gap in a sidewalk was a minor defect and required the entry of judgment in favor of the City, as a matter of law. (*Id.* at pp. 531-532.)

7

In a later case, this Court held that "persons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition. The duty of care imposed on a property owner, even one with actual notice, does not require the repair of minor defects." (*Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 398.) Ursino was injured in a fall on a private sidewalk containing a raised edge that was three-quarters inch higher than the section adjoining it. (*Id.* at p. 396.) Reviewing case law, the opinion notes that when determining triviality, the court considers not only the size of a depression, break or nonalignment in a sidewalk, but also "aggravating factors" instead of rigidly applying a "'tape measure' test." Summary judgment was appropriately granted because "the defect was in fact trivial," based on photographs of the sidewalk. (*Id.* at p. 397. See also *Cadam v. Somerset Gardens Townhouse HOA* (2011) 200 Cal.App.4th 383 [differential in walkway of three-fourths to seven-eighths inch is trivial as a matter of law].)

Though size may be the most relevant factor, "the court should consider whether the walkway had any broken pieces or jagged edges and . . . whether there was debris, grease or water concealing the defect, as well as whether the accident occurred at night in an unlighted area or some other condition obstructed a pedestrian's view of the defect." (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927. See also *Warren v. City of Los Angeles* (1949) 91 Cal.App.2d 678, 680 [large hole containing water and oil was not a trivial defect].) "Furthermore, the court should see if there is any evidence that other persons have been injured on this same defect." (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734.)

## 4. <u>Condition of the Sidewalk at the Site</u>

There is no real dispute that the differential between the Box and the sidewalk was about one inch. According to plaintiff's opposition to summary judgment, Rebecca revisited the Site one day after her mother's accident "and estimated the uneven pavement to be a height differential of ***approximately 1-1/4" deep***, and on July 14, 2009, an associate from Plaintiff's lawyer's firm visited the site and measured the gradation at

8

*just under 1*"."  The construction foreman who installed the Box indicated that the height differential measures one-half inch.

There is no credible evidence in the record that the differential in this case was greater than one inch.  Rebecca "estimated" the height at slightly more than an inch without a lined measuring device such as a ruler or tape measure.  She stated, "I *sort of* put [a finger] against where *I assumed* she *may have* fallen . . . [s]o it was *probably about*" as high as the crease in her finger.  (Italics added.)  When a case hinges on an exact measurement, a guesstimate that a tort-producing defect is "probably about" a certain height merits little consideration, especially when it is based on an assumption about where plaintiff "may have fallen."  "A party cannot avoid summary judgment based on mere speculation and conjecture [citation], but instead must produce admissible evidence raising a triable issue of fact."  (*Compton v. City of Santee* (1993) 12 Cal.App.4th 591, 595-596.)

By contrast, a measurement made 10 days after the accident by plaintiff's attorney with an unsophisticated, lined measuring device (a wooden ice cream spoon) shows a seven-eighths inch differential.  Plaintiff's expert Joe Tuttle measured the differential at one-half inch.  Even if the sidewalk was ground down at some point, actions taken to improve public property are not evidence that the property was in a dangerous condition at the time of injury.  (§ 830.5, subd. (b).)

Officer Tanner's ruler at the Site on the night of the accident shows less than a one-inch differential and the City's engineer measured a differential ranging from one-quarter to three-quarters inch.  Plaintiff's evidence shows that the height differential was one-half inch (Tuttle) to seven-eighths inch (plaintiff's attorney), as objectively measured with a device.  The Supreme Court has indicated that a differential of less than one and one-half inches is not actionable.  (*Nicholson v. City of Los Angeles*, *supra*, 5 Cal.2d at p. 367.)  As a result, the alleged defect is "trivial as a matter of law, unless [plaintiff presents] disputed evidence that other conditions made the walkway dangerous."  (*Caloroso v. Hathaway*, *supra*, 122 Cal.App.4th at p. 927.)

9

At the time of plaintiff's fall, the weather was dry and the sidewalk was free of debris, obstructions and pedestrians. Although plaintiff described the location as "very dark," Rebecca examined a photograph of the Site and testified that the Site was "only a little brighter" than what is shown in the upper-right photo on page 58 of the Clerk's Transcript. "We have reviewed the pictures of the sidewalk and agree with the trial court that reasonable minds could not differ and that the defect was in fact trivial." (*Ursino v. Big Boy Restaurants*, *supra*, 192 Cal.App.3d at p. 397.) The photo on page 58 shows that the Box was visible from a distance and does not pose a substantial risk of injury to anyone who was using due care and watching where she was stepping.

## 5. Conclusion

The City carried its burden of proving, first, that the height differential at the Site was not enough to trigger constructive notice that its sidewalk required repairs and, second, that there was no actual notice of a defect because the City was not notified that other persons had fallen and were injured by this same defect. The minor depth of the Box, alone, is not actionable under Supreme Court case law. Plaintiff did not carry her burden of showing a triable issue as to whether aggravating circumstances at the Site made the defect more dangerous than its size alone would suggest. The City is not an insurer against an injury arising from a trivial defect. (*Fielder v. City of Glendale*, *supra*, 71 Cal.App.3d at p. 734.) Summary judgment was properly granted for the City.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

CHAVEZ, J.                                    FERNS, J.*

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10