Filed 10/1/21  Lopez v. Rosemead CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| FRANCISCA LOPEZ, | B301720 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC646229) |
| v. | |
| CITY OF ROSEMEAD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen I. Goorvitch, Judge.  Reversed.

Century Park Law Group, Robert L. Booker II, Shabnam Sarani; Williams Iagmin and Jon R. Williams for Plaintiff and Appellant.

Barber & Bauermeister, John Barber; Pollak, Vida & Barer and Daniel P. Barer for Defendant and Respondent.

———————————————

Plaintiff Francisca Lopez appeals from a judgment entered after the trial court granted summary judgment in favor of defendant City of Rosemead (the City) in this action alleging Lopez suffered injuries when she tripped and fell on a dangerous condition of public property, a raised sidewalk panel (also referred to as a sidewalk slab). Because Lopez has shown a triable issue of material fact, we reverse the summary judgment.

## BACKGROUND

### I. Lopez Trips and Falls[1]

In the evening, on April 20, 2016, Lopez and her nine-year-old grandson walked from her home to a convenience store on Mission Drive in the City. They walked on the same side of the street as her home. On the way there, they passed over the sidewalk panel where Lopez would later trip and fall, on the walk from the store to her daughter's home, the same evening.

After purchasing a gallon of milk at the convenience store, Lopez and her grandson began the walk to her daughter's home, along the same route they had taken from Lopez's home to the store. Lopez had walked this route "several times" before, but it had been a "very long time" since she had done so.

Lopez tripped and fell at around 9:15 p.m., during the walk to her daughter's home. "It was a clear night," with no clouds or fog. When asked during her deposition if there were street lights, she responded: "Yes. But as you are walking, they turn on or off. Most of the time the lights are off." She also stated that when the street lights turn off, "they remain off for a long time." Lopez did not expressly state whether the street lights were on or off at

---

[1] We take this account of the trip and fall from excerpts of Lopez's deposition, which the parties submitted to the trial court in connection with the City's motion for summary judgment.

2

the time she tripped and fell. When asked during her deposition, "So other than the fact it was dark out, are you aware of anything that made it difficult to see the raised sidewalk panel on the night of the incident," Lopez responded, "No nothing."

As she walked to her daughter's home, Lopez was holding the gallon of milk in her right hand, down at her side, and her grandson was walking close behind her on her right side. She was moving forward when one of her feet hit something near the left side of the sidewalk, and she "stumbled over" it. She fell, "with an outstretched left hand." Her left knee landed in the grass, next to the sidewalk, and her right knee landed on the sidewalk.

Lopez stood up and looked around to see what caused her fall. She observed a raised sidewalk panel and determined that was the location where she tripped. In describing the condition of the sidewalk at her deposition, Lopez stated, "one area was lifted up and broken, and open and raised." Lopez did not notice the raised sidewalk panel before she fell.

At her deposition, Lopez was asked: "And other than the raised sidewalk panel that you believe you tripped on, did you notice if the sidewalk was cracked anywhere else?" She stated, "[n]ot at that place [where she tripped], but further ahead," there were areas where the sidewalk was broken and had no concrete.

## II. Lopez Files A Tort Claim and a Complaint Against the City

### A. Tort Claim

On May 3, 2016, around two weeks after Lopez's trip and fall, her attorney signed a Notice of Claim form (Gov. Code, §§ 910, 910.2) on her behalf. The City received the tort claim on May 17, 2016. In the claim, Lopez described the incident as

3

follows: "Claimant was walking on the sidewalk when her foot caught on a dangerous and defective condition, causing her to fall" and injure her "left hand, knees and ankles."

In the claim, Lopez described the location of the incident as the sidewalk approximately "in front of 8335 Mission Dr." As discussed below, this was not the correct location; she tripped on the sidewalk near 8833 Mission Drive, as was revealed during the litigation in this action. There is no 8335 Mission Drive in the City.

Around a month and a half after her fall, during the daytime, Lopez photographed the sidewalk where she tripped (near 8833 Mission Drive). She did not provide the photographs to the City at or near that time.

Sometime thereafter—although it is not clear when, based on the summary judgment record—the City installed an asphalt ramp on the sidewalk at the location where Lopez tripped, reducing the effect of the raised sidewalk panel. Lopez does not allege any bad faith intent on the City's part in installing the ramp. The City claims, at the time it installed the ramp, it did not know that was the location where Lopez tripped, as she misidentified the location in her tort claim (and her complaint).

## B. Complaint

On July 10, 2017, Lopez filed her complaint for damages against the City in this action. Therein, she alleged: "On or about April 20, 2016, she "was walking on the sidewalk when [she] slipped[2] and fell due to uneven/unleveled sidewalk concrete

---

[2] There is no evidence in the record indicating the sidewalk was slippery. In opposing the summary judgment motion, Lopez did not assert she "slipped" on anything. She maintains she

4

that [she] did not see due to poor lighting[,] and the dangerous condition was not open and obvious." She alleged she suffered physical and mental injuries as a result of the fall. In her complaint, she again incorrectly identified the location of her trip and fall as 8335 Mission Drive. She asserted a cause of action against the City under Government Code section 830 et seq.[3] for dangerous condition of public property.[4]

### III. The City's Adjuster Measures the Condition[5]

Around midday, on August 2, 2017, sometime after the City installed the asphalt ramp, Timothy Varon, the City's third-party claims adjuster, inspected, measured, and photographed the sidewalk at the location where Lopez tripped, near 8833 Mission Drive.[6] ~(1AA 109; 2AA 260)~ He had performed work as a

---

tripped when her foot hit the raised sidewalk panel, which caused her to stumble and fall, as she testified at her deposition.

[3] Undesignated statutory references are to the Government Code.

[4] Lopez also asserted in her complaint causes of action against the City for premises liability and negligence. On appeal, she does not challenge the summary judgment as to either of these two causes of action. Accordingly, we discuss the proceedings and evidence only as they relate to the cause of action for dangerous condition of public property—the only cause of action at issue on appeal.

[5] We take this account of the adjustor's inspection and measurement of the trip and fall location from his declaration in support of the City's motion for summary judgment, and excerpts of his deposition submitted by Lopez in connection with her opposition to the summary judgment motion.

[6] It is not clear from the record before us when and how the City learned the correct location of the trip and fall.

claims adjuster or claims examiner in approximately 50 cases involving "a sidewalk which ha[d] been uplifted."

In the area he inspected on August 2, 2017, he observed only one sidewalk panel that "appeared to be raised by any degree and [he] measured the deviation," as stated in his declaration in support of the City's summary judgment motion. At his deposition, he described the methodology of his August 2, 2017 measurement. Because he did not know the precise spot where Lopez's foot hit the raised sidewalk panel at the time he inspected, measured, and photographed the area—as Lopez had not yet testified at deposition—he measured the deviation in height between the raised and lower adjacent sidewalk panels at three places along the two panels. At the side closest to the curb, he determined the height deviation was one inch; in the center, he determined the height deviation was one and 9/16 inches, or 1.56 inches; and at the side farthest from the curb and closest to the grass, he determined the height deviation was one and 5/16 inches, or 1.31 inches.

Varon testified he was able to measure the height deviation between the two sidewalk panels, even though an asphalt ramp had been installed. He stated he assumed "the measurements that [he] took would have been fairly accurate in terms of what the uplift would have been at the time of the subject incident" because he did not observe "anything that was causing the uplift to continue." He testified his measurements were "a close approximation to the measurement of the uplift of the raised sidewalk slab." He acknowledged that, if he "would have been able to take [the measurements] directly against the site of the uplifted sidewalk slab, it would have been a better indicator." He

6

added, "There would be a degree of measurement error," due to the presence of the asphalt ramp.

As depicted in the photographs attached to his deposition transcript—which he took with his cell phone—Varon testified he lined up the zero on his ruler with what he observed to be "the flat portion of the nonraised [*sic*] sidewalk slab," and measured the height deviation between it and the adjacent raised panel.

As stated in his declaration in support of the summary judgment motion, after the City deposed Lopez, Varon reviewed photographs marked at her deposition "to confirm [he] had "measured the appropriate location." Consistent with his deposition testimony, he stated in his declaration he determined the "left side of the panel, the portion that was closest to the building and farthest from the curbside of the sidewalk, was raised no more than one and one-half inch[es]." As set forth above, Lopez testified at her deposition that her foot hit the left side of the raised sidewalk panel before she stumbled and fell.

## IV. The City Files a Motion for Summary Judgment

### A. The City's moving papers

In its motion for summary judgment, the City argued Lopez could not establish one or more elements of her cause of action for dangerous condition of public property because the alleged dangerous condition was trivial as a matter of law, within the meaning of section 830.2.[7]

---

[7] Section 830.2 provides: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial

7

In support of the motion, the City submitted Varon's declaration and excerpts of Lopez's deposition testimony, summarized above. The City also submitted a declaration from its City Clerk, who stated the City had not received any "Claim for Damages or Complaint," other than Lopez's, regarding "the sidewalk at or near 8833 Mission Drive, Rosemead, California"—the location where Lopez tripped and fell.

## B.    Lopez's opposition

In support of her opposition to the summary judgment motion, Lopez submitted excerpts of her and Varon's deposition testimony, summarized above. She also submitted excerpts of deposition testimony of City employees, Rafael Fajardo and John Bryan Scott. Fajardo, the City Engineer, testified that an uneven or unlevel concrete sidewalk could be a tripping hazard and a dangerous condition. After reviewing photographs of the sidewalk where Lopez tripped and fell, Fajardo testified that in his opinion, the uplifted concrete was a "trip hazard." He also stated that in his opinion, the uplifted concrete could be a dangerous condition if someone was "not paying attention." He acknowledged pedestrians cannot stare at the ground the entire time they are walking.

Scott, the City's Public Works Superintendent, testified uneven or unlevel concrete can be a "trip hazard." After reviewing photographs of the sidewalk where Lopez tripped and fell, Scott testified that in his opinion, the uplifted concrete could be a trip hazard and should be leveled or ramped. He also stated that in his opinion, a sidewalk displacement of an inch or more in

_____

risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."

8

height could be a trip hazard and a dangerous condition and should be temporarily ramped or permanently fixed. When asked if the sidewalk displacement at the time of the incident could have measured two inches, based on the photographs he reviewed at his deposition, Scott testified: "Could have been."

Lopez further submitted in support of her opposition a declaration from her expert, Gary Gsell, a municipal infrastructure assessment consultant. Gsell did not visit the location where Lopez tripped and fell. He based his opinions on his review of (1) photographs he received from Lopez's counsel, depicting the sidewalk at issue "before the asphalt ramp was poured in place, and how it looked at the time of the subject incident"; and (2) transcripts of depositions of the City's employees (presumably the employees whose testimony is referenced above, Fajardo and Scott), Varon, and Lopez.

Gsell stated in his declaration: "After reviewing photographs of the scene of the incident both before and after the asphalt ramp was put in, I determined [the] subject sidewalk would constitute a dangerous condition. The sidewalk had several cracks and fractures leading up to the uneven concrete slabs. Furthermore, the concrete slabs had small jagged edges along the entirety of the uplift. The entire upper slab is uneven, and is lifted at various degrees throughout the horizontal plane. This is further demonstrated even after the asphalt ramp was installed, as the ground is still not level. The photographs depicting the sidewalk, prior to the asphalt ramp being put in, indicate the uplift to be greater than two and one half inches."

Gsell also stated: "The measurements taken by Timothy Varon are erroneous and would not depict the true measurement of the uplift of the sidewalk. In order to determine the true

9

measure, of the uplifted concrete, the measurements would have needed to be taken prior to the asphalt ramp being placed over the uplift. Furthermore, Mr. Varon did not use a level to determine the flat surface of the sidewalk. Mr. Varon testified he found an open space behind the asphalt ramp, which [*sic*] he vertically placed a ruler to determine the height of the uplift. This is incorrect, as there may be broken pieces of concrete underneath the asphalt ramp which would give the illusion the surface is flat." He added: "Clearly, there are no true measurements taken by the City of Rosemead in order to determine the true value of the uneven concrete. Furthermore, the cracks and small jagged edges of the sidewalk slabs would contribute to the overall defect of the sidewalk, making it a dangerous condition."

Gsell further stated in his declaration: "If the City of Rosemead implemented a routine inspection system and enforced the system, they would have discovered the dangerous condition of the subject sidewalk."[8]

In her brief in opposition to the summary judgment motion, Lopez argued there were triable issues of material fact precluding a finding the condition (the raised sidewalk panel) was trivial as a matter of law, including (1) the disagreement between the

_____

[8] We do not summarize the evidence Lopez presented regarding the City's procedures for inspecting sidewalks because, as set forth below, the City's notice of the alleged dangerous condition is not germane to the issue we address on appeal— whether the condition was trivial as a matter of law. In sum, the evidence indicated in 2015 and 2016, the City did not conduct routine inspections of its sidewalks, and the raised sidewalk where Lopez tripped and fell could have been in that condition for a number of years.

City's adjuster and Lopez's expert regarding the height of the sidewalk displacement; (2) whether there were aggravating circumstances (e.g., cracks or jagged edges on the sidewalk, poor lighting); and (3) the City employees' opinions in their depositions (summarized above) regarding whether the condition was a trip hazard and dangerous condition.

The City filed evidentiary objections to Gsell's declaration. In its reply brief in support of the summary judgment motion, the City asserted: "Mr. Gsell's testimony does not offer any specialized evaluation on which an expert would ordinarily rely. Indeed, the photograph submitted as evidence speaks for itself without the need for Mr. Gsell to 'interpret.' Moreover, Mr. Gsell offers an opinion related to the height of the condition, but he never actually measured the deviation, nor did he go to the scene of the incident. Therefore, his opinion is not only speculative, it is based on reasons unsupported by the evidence. For these reasons, the Court should not consider Mr. Gsell's opinions or conclusions and it should grant the [City]'s Motion for Summary Judgment."[9]

---

[9] After the summary judgment motion was fully briefed, Lopez filed a motion for leave to file a first amended complaint, alleging the correct location on Mission Drive where Lopez tripped and fell. The City had argued in its summary judgment motion that Lopez could not prove her cause of action for dangerous condition of public property because she alleged in her tort claim and complaint that the dangerous condition was located at a physical address that did not exist. Over the City's objection, the trial court allowed Lopez to file a first amended complaint correcting the address, and the City answered the first amended complaint before the hearing on the summary judgment motion.

## C.    Trial court's ruling and judgment

Before the hearing on the summary judgment motion, the trial court issued a tentative ruling in favor of the City.  After the parties presented oral argument on the motion, the City asked the court:  "I didn't see that the court addressed any of the objections to evidence.  Does that mean that they were just all overruled?"  The court responded:  "I only addressed the objections that I felt I needed to, to reach the decision, which is my understanding of the law."

After taking the matter under submission, the trial court issued an order granting the City's summary judgment motion.  The court concluded Lopez cannot prove her cause of action for dangerous condition of public property because the defect (the raised sidewalk panel) is trivial as a matter of law.  The court rejected Lopez's argument that Varon, the City's adjuster, incorrectly measured the defect.  The court adopted Varon's determination that the height differential between the raised sidewalk panel and the lower adjacent sidewalk panel was no more than one and a half inches.  In the order, the court did not expressly rule on the City's objections to Gsell's declaration.

### DISCUSSION

The issue before us on the City's summary judgment motion is whether the condition of public property where Lopez tripped and fell is trivial as a matter of law.  Lopez contends she has shown a triable issue of material fact which precludes summary judgment.  We agree.

## I.    Standard of Review

A trial court should grant summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment

12

as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant may establish a right to summary judgment by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the moving defendant has satisfied this burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to each cause of action. (*Ibid*.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66.) We view the evidence and the inferences reasonably drawn from the evidence "in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.)

## II. Applicable Law

"Liability may attach to a governmental entity if there is a dangerous condition on governmental property." (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 565 (*Stathoulis*), citing §§ 830, 835.) The California Tort Claims Act defines "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

13

As set forth above, section 830.2 provides: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."

The trivial defect doctrine recognizes that "persons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition. The duty of care imposed on a property owner, even one with actual notice [of a defect], does not require the repair of minor defects." (*Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 398 (*Ursino*).) "Some defects are bound to exist even in the exercise of reasonable care in the maintenance of property and cannot reasonably be expected to cause accidents." (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 566.) The trivial defect doctrine "provides a check valve for the elimination from the court system of unwarranted litigation which attempts to impose upon a property owner what amounts to absolute liability for injury to persons who come upon the property." (*Ursino*, at p. 399.) "The trivial defect doctrine is not an affirmative defense. It is an aspect of a landowner's duty which a plaintiff must plead and prove." (*Stathoulis*, at p. 567.)

"In determining whether a given walkway defect is trivial as a matter of law, the court should *not* rely solely upon the size of the defect—in this case, on the depth or height of the walkway

14

depression or elevation—although the defect's size 'may be one of the most relevant factors' to the court's decision. [Citation.] The court should consider other circumstances which might have rendered the defect a dangerous condition at the time of the accident. [Citation.]

"These other circumstances or factors include whether there were any broken pieces or jagged edges in the area of the defect, whether any dirt, debris or other material obscured a pedestrian's view of the defect, the plaintiff's knowledge of the area, whether the accident occurred at night or in an unlighted area, the weather at the time of the accident, and whether the defect has caused any other accidents. [Citations.] In sum, '[a] court should decide whether a defect may be dangerous only after considering all of the circumstances surrounding the accident that might make the defect more dangerous than its size alone would suggest.' [Citation.]

"The court's analysis of whether a walkway defect is trivial involves as a matter of law two essential steps. 'First, the court reviews evidence regarding type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors [bearing on whether the defect presented a substantial risk of injury]. If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law . . . .' " (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1105 (*Huckey*).)

## III. Analysis

Varon, the City's adjuster determined the sidewalk panel "was raised no more than one and one-half inch[es]" at the spot where Lopez's foot hit the panel and she stumbled and fell. When

15

a deviation "begins to stretch beyond one inch the courts have been reluctant to find that the defect is not dangerous as a matter of law." (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 726 (*Fielder*).)

In *Huckey*, *supra*, 37 Cal.App.5th 1092, the Court of Appeal stated: "Sidewalk elevations ranging from three-quarters of an inch to one and one-half inches have generally been held trivial as a matter of law." (*Id.* at p. 1107; see also *Stathoulis*, *supra*, 164 Cal.App.4th at p. 568 ["Several decisions have found height differentials of up to one and one-half inches trivial as a matter of law"].) Neither *Huckey* nor *Stathoulis*, nor any of the cases on which they relied for this proposition, actually resolved the matter on appeal by holding a height differential that reached one and a half inches was trivial as a matter of law. (See, e.g., *Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361, 364 [resolving the matter by holding the city did not have constructive notice of "the break and elevation in the concrete surface of the sidewalk" that measured not more than one and a half inches].)

In any event, Varon's own deposition testimony raises a triable issue of material fact as to whether the defect was trivial in light of its size. As set forth above, at his deposition, Varon testified that the measurements he provided were only "a close approximation to the measurement of the uplift of the raised sidewalk slab" at the time Lopez tripped and fell. He also conceded that, due to the presence of the asphalt ramp at the time he made his measurements, "There would be a degree of measurement error."[10]

---

[10] Because we do not rely on the declaration of Lopez's expert (Gsell) in concluding there is a triable issue of material

On appeal from a summary judgment, "the reviewing court takes a fresh look at the photographs [of the defect] relied upon by the trial court and examines the photographs de novo." (*Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 15.) Based on our review of the photographs depicting the raised sidewalk panel, "we conclude reasonable minds could differ as to whether the nature and quality of the defect at issue presented a substantial risk of injury." (*Stathoulis*, *supra*, 164 Cal.App.4th at pp. 569-570.) Lopez has shown a triable issue of material fact as to whether the defect (the raised sidewalk panel) was trivial, and the matter may not be resolved on summary judgment. Accordingly, we reverse the judgment.

---

fact as to whether the defect is trivial, we need not resolve the parties' dispute regarding whether the trial court impliedly ruled on the City's objections to Gsell's declaration and, if not, whether the trial court abused its discretion in declining to exclude the declaration. We note case law indicating, "in this area there is no need for expert opinion. It is well within the common knowledge of lay judges and jurors just what type of a defect in a sidewalk is dangerous." (*Fielder*, *supra*, 71 Cal.App.3d at p. 732.)

**DISPOSITION**

The judgment is reversed.  Appellant is entitled to recover costs on appeal.

NOT TO BE PUBLISHED

                                                    CHANEY, J.

We concur:


        ROTHSCHILD, P. J.


        CRANDALL, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18