[Civ. No. 8934. Third Dist. Mar. 27, 1957.]

MRS. R. J. AMAVISCA, Respondent, v. CITY OF MERCED et al., Defendants; CROCKER-HUFFMAN LAND AND WATER COMPANY (a Corporation), Appellant.

482

Gant & Gant for Appellant.

C. Ray Robinson and Robert T. McCartney for Respondent.

SCHOTTKY, J.—Plaintiff commenced an action against the city of Merced and Crocker-Huffman Land and Water Company to recover damages for claimed injuries resulting from a fall in a public alley in the city of Merced. Her

complaint alleged that defendants maintained a dangerous and defective condition of public property and were negligent in maintaining a water valve and the area surrounding it in the alley in a dangerous and defective condition. Plaintiff alleged injuries as the result of the negligence of the defendants and that such injuries consisted of abrasions and contusions of both legs, resulting in cellulitis and thrombophlebitis, and that such injuries were permanent in nature.

The record shows that on May 24, 1954, the plaintiff, Mrs. R. J. Amavisca, was standing in the alley behind the residence of her neighbor, Mrs. Velasquez. She and Mrs. Velasquez were talking to each other over a fence separating the Velasquez property from the alley. The plaintiff was in the alleyway, whereas Mrs. Velasquez was across the fence and within her own property. While the conversation was taking place, a limb or a branch of a tree nearby cracked and fell onto the roof of the Velasquez property. The limb fell some 10 feet away from where the two women were standing. The limb was some 15 or 20 feet long and made a loud cracking noise when it fell. On hearing the noise, the women became startled and attempted to get away from the scene so as to avoid the danger. There was a hole in the alley close to the fence. Within the hole there was a cutoff valve leading down to the water pipe which furnished water to the Velasquez residence. Around the cutoff valve there was a telescopic metal housing designed to cover the cutoff valve. While getting away from the danger area the plaintiff ran or walked into the hole and fell, striking both of her legs on the metal cutoff valve or on the housing covering this valve.

The case was tried before a jury which returned a verdict in favor of the plaintiff and against the Crocker-Huffman Land and Water Company in the sum of $325, and in favor of the city of Merced and against the plaintiff. The plaintiff made a motion for a new trial as to the Crocker-Huffman Land and Water Company, solely on the issue of the amount of the damages, or, in the alternative, against that company and the city of Merced on all of the issues. This motion was based on all the statutory grounds, but the principal ground relied on by plaintiff in support of said motion was that the damages awarded were inadequate, the specific ground being the statutory ground of insufficiency of the evidence to justify the verdict. The court granted a new trial against the Crocker-Huffman Land and Water Company, but as to all the issues in the case, upon the ground of insufficiency of the

evidence, and denied the motion as to the defendant city of Merced.

Appellant first contends that the court abused its discretion in granting respondent's motion by reason of the inadequacy of damages awarded, because the evidence is wholly insufficient to sustain a judgment against appellant at all. Before discussing this contention it is well to state the following well settled rules which govern an appeal from an order granting a new trial for insufficiency of the evidence to justify the verdict: (1) The order will not be set aside if there is any substantial evidence which would support a verdict and judgment contrary to that entered; (2) In determining whether there is such evidence, all conflicts in the evidence and all conflicting inferences which may be drawn from the evidence must be resolved in favor of the moving party, the respondent; (3) The ground of insufficiency of the evidence to justify the verdict, in that the amount of the verdict is inadequate, on a motion for a new trial, appeals peculiarly to the discretion of the trial court and its order should not be disturbed on appeal in the absence of a showing of abuse of discretion.

And as stated in *Brooks* v. *Metropolitan Life Ins. Co.* (1945), 27 Cal.2d 305, at 307 [163 P.2d 689]:

"In passing upon a motion for a new trial based upon the insufficiency of the evidence, it is the exclusive province of the trial court to judge the credibility of the witnesses, determine the probative force of testimony, and weigh the evidence [citations]. In considering the sufficiency of the evidence upon such motion the court may draw inferences opposed to those drawn at the trial [citation], and where the only conflicts consist of inferences deduced from uncontradicted probative facts, the court may resolve such conflicts in determining whether the case should be retried [citations]. It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court."

We are here confronted with the rather unusual situation of a defendant against whom an award of damages has been made appealing from an order granting a new trial, but in explanation of this appellant states that "the award was relatively small and although we are satisfied that the plaintiff was not entitled to that or any other award, it is obviously cheaper and a saving of time and effort for the appellant to

pay the existing judgment rather than to go through the expense of a new trial.''

We are satisfied that there is substantial liability evidence to support a judgment against appellant.

The testimony as to the size and depth of the hole was in conflict and ranged from 18 inches wide and 6 inches deep to approximately 36 inches by 30 inches wide and approximately 1 foot deep. A city engineer testified that the hole was in the alley and approximately 8 inches from the Velasquez property line. He also testified that he took an elevation of the valve stem with respect to the center line of the alley and that the valve stem was about 10 inches below the center line of the alley. Mr. Lee Hampton testified that from October, 1952, through November, 1953, he resided on the property which at the time of the trial was the Velasquez property. He testified that he knew of the existence of this hole during the period of his residence at that address and that in his frequent mowings of the grass in the alleyway he could not straddle the hole with the wheels of his lawn mower, but had to go around it because otherwise one or the other of the wheels would go into the hole. The lawn mower was standard size.

Mr. Otto Farmer testified that he was the service man for the appellant water company and that he made a call to the water valve in question for the purpose of turning on the water on March 15, 1954, which was nine weeks prior to the plaintiff's fall. He testified that the hole existed then and that it was at least 18 inches across and some 6 inches deep, with the cutoff valve and housing extended up from the bottom of the hole for at least 1½ or 2 inches. Despite this condition, he testified that he left it as he found it after turning on the water and that he did nothing whatever towards filling the hole or leveling it off, nor did he report this condition to his superiors. As to his instructions, he testified as follows:

''Q. Did you have any instructions on that particular matter from your superiors as to filling the holes after digging them out to expose the valve? A. Yes. Q. And what were the circumstances? A. To be sure that you filled the hole back in if you had to dig one out. Q. To the original ground level? A. Yes.''

The records kept by the water company show that numerous service calls were made to the water valve in question. Mr. Farmer further testified that the hole appeared to have been

there for a long time. The combined effect of the foregoing evidence is sufficient to support an inference that a dangerous or defective condition had existed and was permitted to exist by the defendant around its water cutoff valve, and that the defendant knew of this condition and of its existence for a long time prior to the injury of plaintiff, and that neither defendant nor any of its agents, representatives, or service men did anything whatever to remedy the situation.

Appellant argues that the evidence proves that the respondent was in the act of running at the time she allegedly fell in a portion of the alley in which the water company or Mr. Farmer could not reasonably foresee a person's running, and, moreover, it also proves that she was running, at the time of her alleged fall, in a portion of the alley where it was extremely hazardous to do so because it was a portion never intended for pedestrian use and unmaintained. Appellant argues further that in doing so the respondent created an unreasonable risk of harm toward herself, and was guilty of contributory negligence as a matter of law or of assumption of risk.

There can be no question as to the duty of appellant water company to maintain its water valves in a safe condition, and whether in the instant case the water valve in the alley was maintained in a safe condition was an issue upon which the most that can be said in favor of appellant is that the evidence was conflicting. Likewise, the most that can be said in appellant's favor as to the issue of contributory negligence or assumption of risk on respondent's part is that the evidence was conflicting. The evidence being conflicting, and the trial court having the power and right to weigh the evidence upon a motion for a new trial, there is no merit in appellant's contention that the evidence is wholly insufficient to sustain a judgment against appellant at all.

Appellant's next contention, ''That, assuming the water company to be liable, there is no substantial evidence that the damages awarded to the plaintiff by the jury are clearly or grossly inadequate to fully compensate her for any detriment she suffered by reason of her fall, and, therefore, the court in granting plaintiff's motion for a new trial abused its discretion,'' is equally without merit.

The plaintiff testified that by falling into the hole she had received injuries consisting of skinned places on both legs and that she was shocked and dazed; that she put hot compresses on her ankles and took aspirin for about three days

and then went to see Dr. Hicks. He treated her and prescribed some medicine. The pain became worse and on June 7th she returned to the doctor.

Dr. Shelby M. Hicks testified that he had examined her legs which had abrasions and skinned places, were swollen, red, hot, beginning to become infected, and the veins had been damaged to where there was occlusion or stoppage of the blood flow. He gave her antibiotics and instructions to go home and elevate her legs and keep off of them and to use compresses. On her later visit to him he sent her to the hospital. At this time there was no improvement as far as the blood flow was concerned, the legs were discolored, there was swelling caused by edema or extra amount of fluid being held in the legs and feet, and there were abrasions, damage to the veins, a traumatic thrombophlebitis or blood clots in the veins, with inflammation, swelling because of the damage to the veins, infection, and stasis-dermatitis where the skin gets swollen and is too tight, so that it peels off and becomes reddened and thin. Dr. Hicks did not treat her while she was in the hospital, but had been treating her regularly since her release therefrom. He testified that her condition had not shown much improvement and that she will probably not improve greatly during the remainder of her life. He has instructed her to remain off of her feet except for bathroom privileges and getting up to eat and going to and from one room to another. He testified that he did not think she will ever get around too well again. Dr. Hicks testified further that from the medical history that she had told him, he believed that her injuries were caused by the falling into the hole on the iron in question.

There was also testimony of two other doctors describing respondent's injuries and treatment. In addition, plaintiff's husband and witnesses Carter, Descalso, Green, Hampton, and Simpson all testified in effect that plaintiff was in good physical condition prior to her fall and that she did extensive work both in and outside of her home but that after the accident she was in serious physical condition and was greatly handicapped as a result of her fall.

While appellant points to other evidence minimizing the injuries to respondent, such evidence merely creates a conflict which, as hereinbefore pointed out, it was the function of the trial court to weigh upon the motion for a new trial. Respondent's special damages amount to $309.28 and it seems highly improbable that the sum of $15.72, which was the differ-

ence between the amount of special damages and the amount of the verdict, would be adequate to compensate respondent for her injuries.

Appellant's final contention is that the trial court abused its discretion in granting a new trial on all issues when respondent's motion was for a new trial upon the issue of damages only. We do not agree with this contention. We believe that the law is correctly stated in *Harper* v. *Superior Air Parts, Inc.*, 124 Cal.App.2d 91, 92 [268 P.2d 115], as follows:

"A new trial may be granted upon the ground of insufficiency of the evidence for the reason that the damages awarded are inadequate. (*Franklin* v. *Bettencourt*, 16 Cal.App.2d 511, 514 [60 P.2d 1017].) Upon a motion for a new trial based upon the contention that damages are inadequate the trial court should review the evidence, not only with respect to the issue of damages but also with respect to the issue of liability. (See *Bakurjian* v. *Pugh*, 4 Cal.App.2d 450, 454 [41 P.2d 175].)"

What was said by our Supreme Court in *Clifford* v. *Ruocco*, 39 Cal.2d 327, at page 330 [246 P.2d 651], is quite applicable to the instant case:

"In view of this conflict in the evidence, and considering that the damages awarded were less than plaintiff's undisputed special damages and loss of earnings, it would appear that the verdict was the result of a compromise on the issues of liability and damages, and substantial justice requires that the case be retried in its entirety."

No other points raised require discussion.

The order is affirmed.

Van Dyke, P. J., and Peek, J., concurred.