Filed 11/10/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NIEVES MARTINEZ, | B305826 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC667123) |
| v. | |
| CITY OF BEVERLY HILLS, | |
| Defendant and Respondent. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge. Judgment affirmed.

Carpenter, Zuckerman & Rowley, Gary S. Lewis, and Gregory A. Coolidge for Plaintiff and Appellant.

Burke, Williams & Sorensen, Michael R. Nebenzahl, and Charles H. Abbott for Defendant and Respondent.

\* \* \* \* \* \*

A public entity is liable for injuries caused by a "dangerous condition" on public property if the entity either creates that condition itself or is otherwise negligent because it had actual or constructive notice of the condition but did not repair it. (Gov. Code, §§ 835, 835.2.)[1] A public entity will be charged with constructive notice of a dangerous condition only if (1) the dangerous condition existed for a sufficient period of time before the plaintiff's injury, and (2) it was sufficiently obvious that the entity acted negligently in not discovering and repairing it. (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 842-843 (*Carson*); *State of California v. Superior Court* (1968) 263 Cal.App.2d 396, 400 (*State of California*).) The plaintiff in this case was walking across a back alley and tripped when one of her soft-bottomed flip-flops hit the edge of a concrete drainage ribbon running down the alley's center, and this happened in part because some of the asphalt abutting the ribbon had worn away to create a 1.75-inch-deep divot. Such an imperfection may likely have created a triable issue of fact as to whether it was obvious enough to be discovered had it been located on a sidewalk. But does the same analysis apply to an alley? We conclude that the answer is "no." "[M]unicipal liability for defective streets and sidewalks" turns in part upon "the location, extent, and character of use of the walk in question" and "the resources in men and money available to cope with the problem." (*Nicholson v. Los Angeles* (1936) 5 Cal.2d 361, 367 (*Nicholson*); accord, § 835.2, subd. (b)(1).) Because alleys, unlike sidewalks, are designed and primarily used for purposes *other than* walking, and because the cost to municipalities of inspecting alleys with the same vigilance

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

as inspecting sidewalks would be astronomical relative to the benefit of doing so, we hold that what is an obvious defect in the condition of an alley is not the same as for a sidewalk. Because reasonable minds can reach only one conclusion—namely, that the less-than-two-inch deep divot in the asphalt abutting a drainage vein in the alley is not an obvious defect—we affirm the trial court's grant of summary judgment in this case.

## FACTS AND PROCEDURAL BACKGROUND

I.     **Facts**

A.     *Incident*

Nieves Martinez (plaintiff) works at a law firm that occupies three offices within walking distance of each other in the City of Beverly Hills, California (the City). The law firm's main office is located at 361 South Robertson Boulevard, and can be accessed from the rear by an alley that runs parallel to the boulevard. The alley is "relatively flat" and paved with asphalt, and has a drainage channel (called a "swale") made of concrete that runs down its center. The law firm's employees use the alley to walk between its offices. Plaintiff parks in a space in the alley near the satellite office where she works, and thus walks through the alley's center to get to the main office only once a month.

In the late morning of July 8, 2016, plaintiff was walking through the alley from the law firm's main office to her satellite office. She was wearing soft-bottomed flip-flops and carrying a paper plate piled with pastries. As she walked toward the alley's center, the front edge of her flip-flop hit the edge of the swale; the asphalt that is normally flush against the edge of the swale had worn away, creating a divot that was "approximately" 1.75 inches in depth. The divot had been there since "at least 2014."

3

**B.** *The City's inspection and maintenance of the alley*

The City is aware that people sometimes walk in its alleys, but "the alleys are not intended for pedestrian walkways." Instead, the City's alleys are primarily used by "heavy commercial trucks, trash trucks, delivery trucks, [and other] large equipment"; this use "tend[s] to degrade asphalt over time." To ensure that alleys stay safe for this use, the City does two things. First, the City has a "pavement management program." Every two years, the City hires a contractor to inspect all of the City's streets and alleys and to prepare a "report spelling out the condition of the alley or street as a whole," which the City then uses to prioritize when it "resurface[s]" those streets and alleys. This program is "not designed to identify specific divots, such as the one plaintiff tripped in." Second, the City will inspect—and, if warranted, repair—any "potential hazards" in response to "user calls." The City does not otherwise "inspect alleys," and had not inspected the alley behind this block of Robertson Boulevard since at least 2009.

Since January 1, 2010, the City had received no complaints or work orders "with respect to the . . . divot" on which plaintiff tripped. Since January 1, 2001, no person had filed a claim with the City or filed a lawsuit against the City claiming injury occurring from any divot in that alley.[2]

---

[2] Plaintiff objected that the City's evidence regarding this database search producing this information was inadmissible hearsay because the declarant stated she conducted the database search *herself* when, in fact, she later stated it was performed by the third party administrator who runs the City's database. The trial court overruled that objection, and plaintiff's cursory reference to this ruling in her appellate briefs is insufficient to

4

In October 2015, the City received a "user call" reporting a "large indentation" in the alley where plaintiff was injured.[3] When a City work crew went to the alley to repair the indentation later that same month, the seven crew members ended up filling three potholes—one was 2 feet by 10 feet, one was 3 feet by 4 feet, and the third was 3 feet by 12 feet. The crew did not repair the divot at issue. It is unknown whether any crew member saw the divot, but even if they had, the crew "would have done nothing" to fix it "because the size of the divot is so insignificant" and because the "material" used to patch the larger potholes cannot be used for such small divots.

## II.  Procedural Background

### A.  *Complaint*

In June 2017, and while represented by the law firm that employs her, plaintiff sued the City for the injuries suffered when

---

challenge that ruling on appeal. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [argument is "'waived'" if the appellant "'fails to support it with reasoned argument and citations to authority'"].) We will accordingly consider the evidence.

[3]  In her reply brief on appeal, plaintiff implies that the complaint the City received may have been for the divot because "[i]t may be that the [City's] employees were simply guessing about which pothole they were supposed to repair." Even if we overlook that a less-than-2-inch divot cannot realistically be described as a "large indentation," plaintiff's suggestion that the City employees were "simply guessing" is based on nothing but speculation, which does not create a triable issue of fact. (*McHenry v. Asylum Entertainment Delaware, LLC* (2020) 46 Cal.App.5th 469, 479 ["speculation cannot create a triable issue of material fact"].)

5

she "tripped and fell on a dip/hole/uneven portion of the pavement in the alley" under theories of premises liability and negligence.[4]

### B. *Summary judgment proceedings*

The City moved for summary judgment on the grounds that (1) the divot was too trivial to constitute a dangerous condition, and (2) the City had no notice of the dangerous condition. Following briefing, and a hearing, the trial court granted summary judgment for the City. The court rejected the City's first proffered basis for summary judgment, ruling that the divot was *not* "trivial as a matter of law," chiefly because the City "did not submit evidence of the character of the divot" in its moving papers. However, the court accepted the City's second proffered basis for summary judgment. The court ruled that the City had carried its initial burden of showing that it had no actual or constructive notice of the divot based upon the absence of any entries in its pertinent databases. This shifted the burden to plaintiff to show a triable issue of fact, and the trial court ruled that plaintiff had not carried her burden. Specifically, the court reasoned that plaintiff had adduced "no evidence that [the City's] employees either saw or should have seen the divot" when they were patching the alley in October 2015, and that the City's two-part inspection system was "sufficient" for alleys, given that alleys—unlike sidewalks—are "designed for access" and not for walking.

---

[4] The law firm's workers' compensation insurer subsequently filed a complaint in intervention, which the trial court granted. The insurer dismissed this complaint following the entry of summary judgment for the City.

**C.  *Appeal***

Following the entry of judgment, plaintiff filed this timely appeal.

## DISCUSSION

Plaintiff argues that the trial court erred in granting summary judgment to the City because there are triable issues of fact regarding whether the City had notice of the divot.  The City defends the trial court's ruling on notice, and also contends that summary judgment should be upheld because the divot is "trivial as a matter of law."  As explained below, we conclude that summary judgment is appropriate because the City did not have notice of the divot; this obviates any need to reach the parties' alternative arguments regarding triviality.

**I.  Pertinent Law**

**A.  *On summary judgment***

A defendant is entitled to summary judgment if it can "show that there is no triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)  The defendant bears the initial burden of establishing that the plaintiff's cause of action has "no merit" by showing that the plaintiff cannot prove "one or more elements of [her] cause of action."  (*Id.*, subds. (o) & (p)(2).)  If this burden is met, the "burden shifts" to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action."  (*Id.*, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)  We independently decide whether summary judgment is appropriate.  (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273.)

**B.** *On the liability of public entities for injuries on public property*

Plaintiff's claims for premises liability and negligence rest on the same elements—namely, (1) a legal duty of care, (2) breach of that duty, and (3) proximate cause resulting in injury. (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158; *Issakhani v. Shadow Glen Homeowners Assn., Inc.* (2021) 63 Cal.App.5th 917, 924 (*Issakhani*).) When a person is injured on public property, the public entity's duty of care and the circumstances under which it is breached turn on (1) whether "the property was in a dangerous condition"; (2) whether "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (3) whether the public entity was negligent. (§ 835.)

1. *Dangerous condition*

Public property is in a "dangerous condition" when it "creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a); *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 147.) As this definition implies, not every defect on a property constitutes a dangerous condition; this reflects the reality that it is impossible for a public entity to keep its property free of *all* defects. (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 725-726 (*Fielder*) ["Minor defects nearly always have to exist"]; *Whiting v. National City* (1937) 9 Cal.2d 163, 165 (*Whiting*) ["it is impossible to maintain a sidewalk in a perfect condition"].) As this definition also implies, a public entity is not liable if "'the property is safe when used with due care'" and "'the risk of harm is created only when

foreseeable users fail to exercise due care.'" (*Swaner v. City of Santa Monica* (1984) 150 Cal.App.3d 789, 799; cf. *ibid.* [a "plaintiff-user['s]" comparative negligence *in a particular case* "has no bearing upon the determination of a 'dangerous condition'"].)

2. *Negligence*

Even if there is a dangerous condition on public property, a public entity is liable for injuries caused by it only if the entity was negligent. This requirement of negligent behavior is critical; without it, public entities would become the "insurer[s] of [their] public ways," a result at odds with public policy. (*Whiting*, *supra*, 9 Cal.2d at p. 166; *Nicholson*, *supra*, 5 Cal.2d at p. 365; *George v. Los Angeles* (1938) 11 Cal.2d 303, 308 ["a municipality is not an insurer of the safety of travelers on its streets"].)

A public entity may be negligent—and hence liable for injuries caused by a dangerous condition on its property—in one of two ways. The public entity is negligent if it "created the dangerous condition." (§ 835; *Fackrell v. San Diego* (1945) 26 Cal.2d 196, 203 (*Fackrell*) [city is liable for defects with project it designed and built].) The public entity is also negligent if it did not take "measures to protect against [a] dangerous condition" (that it did *not* create) if it had "actual or constructive notice of th[at] dangerous condition." (§ 835; *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 715, 717, italics omitted.) Because a public entity necessarily has notice of dangerous conditions it *itself* creates (*Wise v. Los Angeles* (1935) 9 Cal.App.2d 364, 367), actual or constructive notice is only at issue with the latter type of negligence.

9

### a.    Actual notice

A public entity has "actual notice of a dangerous condition" if it has (1) "actual knowledge of the existence of the condition" and (2) "knew or should have known of its dangerous character." (§ 835.2, subd. (a).)  To establish actual notice, "[t]here must be some evidence that the employees had knowledge of the particular dangerous condition in question"; "it is not enough to show that the [public entity's] employees had a general knowledge" that the condition can sometimes occur.  (*State of California*, *supra*, 263 Cal.App.2d at p. 399.)

### b.    Constructive notice

A public entity has "constructive notice of a dangerous condition" "only if" (1) "the condition had existed for" some period of time prior to the plaintiff's accident, and (2) "the condition . . . was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." (§ 835.2, subd. (b); *Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 73 (*Barrett*) ["If [a] defect . . . presents no element of conspicuousness or notoriety, its continued existence does not impart notice to the municipality"]; *State of California*, *supra*, 263 Cal.App.2d at p. 400.)  The second element—that the defect be so "obvious," "conspicuous[,]" or "notori[ous]" that it should have been discovered by the public entity (*Nicholson*, *supra*, 5 Cal.2d at p. 364; *Barrett*, at p. 73; *Laurenzi v. Vranizan* (1945) 25 Cal.2d 806, 812; *Whiting*, *supra*, 9 Cal.2d at p. 166)—is critical because it is the public entity's failure to discover and repair an *obvious* defect that makes it appropriate to impute knowledge of that defect to the entity, which is what renders that entity negligent for failing to correct a defect despite that imputed knowledge.  (*Carson*, *supra*, 36

10

Cal.3d at p. 842; *State of California*, at p. 400.)  Because it is the failure to discover and repair an obvious defect that renders the public entity negligent (and hence potentially liable for injuries caused by that defect), it becomes relevant whether (1) the entity had a "reasonably adequate" "inspection system" in place "to inform [it] whether the property was safe for the use or uses for which [it] used or intended others to use the public property and for uses that the public entity knew others were making of the public property" and (2) the entity "operated such an inspection system with due care" and *still* "did not discover the" defect.  (§ 835.2, subd. (b).)  Although constructive notice of a defect may be imputed to a public entity that fails to have a "reasonably adequate" inspection system (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1203), constructive notice will *not* be imputed if the defect is not sufficiently obvious (*Nicholson*, at pp. 364-365 ["where [a public entity] is charged with constructive notice on the basis of a duty to inspect, it must be made to appear that a reasonable inspection would have disclosed the defect or dangerous condition"]).

So what makes a dangerous condition sufficiently "obvious" to warrant charging a public entity with negligence for failing to discover it?

A defect is not obvious just because it is *visible*.  (*Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313, 320-321 (*Heskel*); see also § 835.2, subd. (b) [constructive notice requires proof that defect was so obvious that the public entity "should have discovered the condition *and* its dangerous character"], italics added.)

A defect is not obvious just because it is nontrivial.[5] (*Barone v. City of San Jose* (1978) 79 Cal.App.3d 284, 290-291 (*Barone*); *Antenor v. City of Los Angeles* (1985) 174 Cal.App.3d 477, 482 (*Antenor*).)  That a defect in public property is not trivial establishes only that it qualifies as a "dangerous condition." (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 566 (*Stathoulis*) ["The law imposes no duty on a . . . public entity . . . to repair trivial defects"]; *Fielder*, *supra*, 71 Cal.App.3d at pp. 725-726.)  Nontriviality, without more, does not also mean that that the defect is *obvious*; if it did, then the constructive notice element would be automatically satisfied in every instance where that dangerous condition preexisted the accident and thus would effectively write the negligence element out of the statute.  (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 956 [courts may not "rewrite statutes"].)  This is why courts have treated the question of whether a defect is too trivial to qualify as a dangerous condition as distinct from the question of whether the defect is obvious enough to impart constructive notice. (*Barone*, at pp. 290-291; *Antenor*, at p. 482; but see *Owen v. Los Angeles* (1947) 82 Cal.App.2d 933, 939 [misreading *Fackrell* to stand for the proposition that "[p]roof of the existence for a long period of time of a dangerous or defective condition of a street is sufficient to justify a finding of constructive knowledge of the condition"].)

Instead, whether a nontrivial defect is sufficiently obvious, conspicuous, and notorious that a public entity should be charged

---

[5]	Because the question of triviality and constructive notice are analytically distinct, our conclusion based on the latter obviates our need to confront the parties' arguments regarding the former.

with knowledge of the defect for its failure to discover it depends upon "all [of] the existing circumstances." (*Nicholson*, *supra*, 5 Cal.2d at p. 367.) Those circumstances include (1) "the location, extent, and character of the use of the walk [or, more generally, the public property] in question," which looks to both its intended use for travel as well as the actual "frequency of travel in the area" (*ibid.*; *Barone*, *supra*, 79 Cal.App.3d at pp. 290-291; § 835.2, subd. (b)(1) [looking to "whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property"]); and (2) "the magnitude of the problem of inspection" (*Nicholson*, at p. 367), and more specifically, "the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise" (§ 835.2, subd. (b)(1); accord, *Nicholson*, at p. 367 [looking to "the resources in men and money available to cope with the problem"]; *Fackrell*, *supra*, 26 Cal.2d at p. 206 [inspections should be "commensurate in scope with the nature and character of [the public entity]'s knowledge and the peril which should be avoided"]).[6]

---

[6] Several cases articulate additional factors bearing on constructive notice such as "the cause and nature of the defect and the length of time it had existed" (*Nicholson*, at p. 367) as well as the "visibility of the condition" and "the probability, if any, that a reasonable inspection by appropriate . . . officials would have discovered its existence and its dangerous character" (*Barone*, at p. 291), but these factors do not address how to calibrate when a nontrivial defect is sufficiently obvious to impart constructive notice.

13

## II. Analysis

We independently conclude that the trial court correctly granted summary judgment because there is no triable issue of material fact as to whether the City lacked notice of the divot at issue in this case.

### A. *Actual notice*

There is no triable issue of material fact as to whether the City lacked actual notice of the divot. Through the undisputed evidence showing that the City had not received any complaints about the alley's divot in the six years preceding plaintiff's accident and had not been presented with any claims or lawsuits in the preceding 15 years, the City carried its initial burden of proving that it did not actually know of the divot. Thus the burden shifted to plaintiff to prove that there was a triable issue of fact as to the City's actual notice, but she introduced no evidence on this point.

Plaintiff responds with a two-step argument—namely, that (1) we are required to infer that the City had actual notice because the City did not produce a declaration from every possible City employee who may have been in the alley in the past denying having seen the divot, and (2) this is a reasonable inference that creates a triable issue of fact foreclosing summary judgment (e.g., *PMC, Inc. v. Kadisha* (2000) 78 Cal.App.4th 1368, 1387). For support, plaintiff cites Evidence Code section 413 and *Breland v. Traylor Engineering & Mfg. Co.* (1942) 52 Cal.App.2d 415 (*Breland*). We reject this argument. Evidence Code section 413 authorizes a "trier of fact" to "consider" a "party's failure to explain or to deny by his testimony such evidence or facts in the case against him" or "his willful suppression of evidence." (Evid. Code, § 413.) *Breland* held that a defendant's failure "to produce

14

evidence that would naturally have been produced" leads to "the risk that the trier of fact will infer, and properly so, that the evidence, had it been produced, would have been adverse." (*Breland*, at p. 426; see also, *Williamson v. Superior Court* (1978) 21 Cal.3d 829, 835, fn. 2 ["'A defendant is not under a duty to produce testimony adverse to himself, but if he fails to produce evidence that would naturally have been produced he must take the risk that the trier of fact will infer, and properly so, that the evidence, had it been produced, would have been adverse,'" italics omitted].)  This authority certainly *permits* an inference that a party's "failure" to "produce," "explain or deny" evidence means that the evidence not produced, explained or denied is adverse to that party, but it does not compel the inference—particularly one that is inevitably *reasonable*—that a party's failure to identify every agent who could disprove its actual knowledge means that the party actually *had* actual knowledge.  Were this the case, summary judgment for public entities sued for maintaining dangerous conditions could only ever be granted if the public entities submitted an "I didn't see anything" declaration from every employee and agent who visited the public property at issue.  And, because summary judgment is granted in many of these cases without such practically unobtainable evidence, the courts have necessarily rejected plaintiff's novel argument.  What is more, any such inference would not be reasonable here: Plaintiff urges that there is a reasonable inference that the City was actually aware of the divot because the City did not introduce declarations from each of the seven crew members who repaired the alley in October 2015 disclaiming having seen the divot.  However, this is not a reasonable inference in light of the undisputed evidence from the crew members' supervisor that the

crew members would have taken no notice of the divot in the first place because it was too insignificant to be patched. The absence of declarations from employees saying that they did not notice something they were not looking for does not somehow mean that the thing they were not looking for was, in fact, something they saw.

**B.** *Constructive notice*

There is also no triable issue of material fact as to whether the City lacked constructive notice of the divot. Because there are triable issues of fact regarding how long the divot had existed prior to plaintiff's accident, the propriety of granting summary judgment on the issue of constructive notice in this case turns on whether that divot was sufficiently obvious such that the City should be charged with knowledge of it and, therefore, liable for failing to repair it. (§ 835.2, subd. (b).)

Thus, we confront the legal issue at the nub of this appeal: Is there a different standard for assessing when a defect is "so obvious" to impart constructive notice to a public entity when the defect is located in an alley rather than on a sidewalk?

We conclude that the answer is yes.

As noted above, the law explicitly contemplates such differentiation: Our Supreme Court in *Nicholson*, *supra*, 5 Cal.2d at p. 367, noted that whether a particular defect was sufficiently obvious to impart constructive notice depended upon "the location, extent, and character of the use of the walk [that is, the public property] in question," and our Legislature incorporated this consideration in section 835.2 by also looking to "whether the property was safe for the . . . uses *for which the public entity used or intended others to use the property*" and the "uses *that the*

16

*public entity actually knew others were making of the property*" (§ 835.2, subd. (b), italics added).

More to the point, such differentiation is warranted as between sidewalks and alleys. It takes less for a defect in a sidewalk to be obvious. The reasons for this are, well, obvious. As their very name implies, side*walks* are made for perambulation. Pedestrians on sidewalks accordingly have "the right to assume [that] the surface would be safe" without having to "'"keep [their] eyes fixed on the ground."'" (*Garber v. Los Angeles* (1964) 226 Cal.App.2d 349, 358.) Given the very likely danger to pedestrians and others from all but the most trivial of defects in sidewalks, the "likelihood and magnitude of potential danger" due to failure to maintain sidewalks in good condition justifies a requirement that public entities apply more rigorous scrutiny to searching sidewalks for defects, even if that means greater cost. (§ 835.2, subd. (b)(1); *Nicholson, supra,* 5 Cal.2d at p. 367.) A need for greater attention to pedestrian safety—and hence a more exacting standard for obviousness—may also apply to those portions of roadways that pedestrians cross (such as crosswalks or streets with sidewalks on both sides) and to parking lots heavily used by pedestrians. (*Stathoulis, supra,* 164 Cal.App.4th at pp. 563-566 & fn. 2 [some streets]; *Owen, supra,* 82 Cal.App.2d 933, 938-939 [crosswalks and some streets]; *Rhodes v. Palo Alto* (1950) 100 Cal.App.2d 336, 337, 343 [parking lot in community center].)

Alleys are different. To be sure, people sometimes walk in alleys (typically, to access parking or the rear entrances of buildings). This makes such use foreseeable, as it was in this case. But that is not "the use . . . for which the public entity . . . intended others to use" the alley. Instead, the alleys are intended

17

for heavy vehicles—from trash trucks to delivery trucks and everything in between—to access and provide services to the abutting businesses and residences. Plaintiff does not dispute this point; nor could she because the vast bulk of trip and fall cases documented in California appellate decisions involve sidewalks, while only a small handful involve alleys. (E.g., *Amavisca v. Merced* (1957) 149 Cal.App.2d 481 [plaintiff stepped in deep hole in alley]; *Parsell v. San Diego Consol. Gas & Electric Co.* (1940) 41 Cal.App.2d 382 [plaintiff tripped in trench dug in alley]; cf. *Redmond v. Burbank* (1941) 43 Cal.App.2d 711 [plaintiff injured on sidewalk where it intersected alley].) Because the surface of alleys degrades far more quickly than the surface of sidewalks—because alleys, unlike sidewalks, are almost exclusively used by heavy vehicles—the cost of keeping alleys safer for pedestrian traffic is higher. And because alleys are used for walking far less frequently than sidewalks, the likelihood of injury to pedestrians is much lower. Because the cost of keeping alleys as defect-free as sidewalks for foot traffic has greater cost and less benefit, public entities may reasonably elect to apply less rigorous scrutiny when inspecting alleys for defects (as compared with sidewalks). In other words, the universe of "obvious defects" for alleys is smaller than the universe of "obvious defects" for sidewalks.

For these reasons, we conclude that the divot in this case, which was less than two inches in depth and located in an alley where the alley's asphalt abuts its concrete drainage swale, is, as a matter of law, not a defect that is "of such an obvious nature that [the City], in the exercise of due care, should have discovered the condition and its dangerous character." (§ 835.2, subd. (b); cf. *Amavisca, supra*, 149 Cal.App.2d at pp. 485-486 [private property

18

owner liable for injury caused by hole in alley that was 6 inches deep and 18 inches wide].)  To hold otherwise is to mandate that municipalities comb their alleyways for defects with the same precision as they do their sidewalks; as noted above, neither public policy nor precedent supports such a holding.

In addition to making the same "negative inference" argument we rejected with respect to actual notice, plaintiff raises three further categories of challenges as to why there are triable issues of fact regarding constructive notice.

First, she argues that the question of whether a defect is sufficiently "obvious" is typically a factual question reserved for a jury, and hence an inappropriate basis for summary judgment. Plaintiff is correct that the obviousness of a defect is "normally [a] question[] of fact . . . to be resolved by [a] jury." (*Strongman v. County of Kern* (1967) 255 Cal.App.2d 308, 315; *Carson*, *supra*, 36 Cal.3d at p. 843 [noting that this question is "properly left to the jury"].)  But it is not *always* a jury question:  Where, as here, a court is called upon to define the boundaries of a property owner's liability, determining that issue "'as a matter of law [on a motion for summary judgment] rather than always submitting the issue to a jury provides a check valve for the elimination from the court system of unwarranted litigation which attempts to impose upon a property owner what amounts to absolute liability for injury to persons who come upon the property.'" (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 567, quoting *Ursino v. Big Boy Rests.* (1987) 192 Cal.App.3d 394, 399; accord, *Fielder*, *supra*, 71 Cal.App.3d at p. 734 [so holding, as to whether a defect is trivial as a matter of law]; *Barrett*, *supra*, 41 Cal.2d at p. 73 [same].)  Our Supreme Court has applied this very principle to conclude that a defect was not sufficiently obvious to impart constructive notice

19

(*Whiting*, *supra*, 9 Cal.2d at pp. 165-166), and we are doing the same.

Second, plaintiff argues that we are not allowed to define the standard for when a defect is sufficiently "obvious" differently for alleys. As support, she cites a passage from a footnote in *Stathoulis* observing that, in examining whether a defect is trivial, "[t]he question is not the location of the defect, per se, but whether it may reasonably be anticipated pedestrians will use the surface as a public walkway." (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 566, fn. 2.) To begin, the passage in *Stathoulis* addresses whether to adopt a varying standard of triviality (for purposes of defining whether a "dangerous condition" exists) rather than the separate question of whether to adopt a varying standard of obviousness (for purposes of defining when to impute constructive notice); as noted above, these are distinct issues. More to the point, when it comes to the test for obviousness, our Supreme Court in *Nicholson* and our Legislature in section 835.2 specifically rejected the argument plaintiff now advances— namely, that there is a one-size-fits-all definition of obviousness. (*Nicholson*, *supra*, 5 Cal.2d at p. 367 [looking to "the location, extent and character of the use of the walk"]; § 835.2, subd. (b)(1) [looking to "whether the property was safe for the . . . uses for which the public entity used or intended others to use the property"].) Lastly, the thoroughfare at issue in *Stathoulis* was a street between two sidewalks, not an alley.

Third, plaintiff argues that the evidence before the trial court *in this case* creates a triable issue of fact.

She starts by arguing that the City never met its initial burden of showing that the divot was not obvious because the City did not, in its moving papers, introduce evidence of the

divot's size and character, of the City's standards for when its employees doing repairs in alleys must inspect other defects they observe, or of how the City trains its employees to conduct such inspections. While it is true that a party moving for summary judgment must establish its prima facie entitlement using only the evidence it puts forth in its moving papers (e.g., *Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 353-354; see generally, Code Civ. Proc., § 437c, subd. (p)(2)), here the City met its initial burden of establishing that the divot was not obvious through the testimony of the supervisor who declared that the divot was too "insignificant" for repair given its location in the alley.

Plaintiff asserts that even if the City carried its initial burden, she provided sufficient contrary evidence to create a triable issue of material fact through the expert testimony she submitted regarding (1) the obviousness of the divot and (2) the inadequacy of the City's inspection system for its alleys. Plaintiff's first expert, a "municipal infrastructure assessment consultant," opined that the divot "was not too small or insignificant to be repaired" and that it "could have and should have been patched by the City." To the extent the expert's language that the divot was "not too . . . insignificant" is construed as an opinion that the divot was not a trivial defect and thus qualifies as a dangerous condition, it is irrelevant to the distinct issue of constructive notice. To the extent we construe the language as an opinion that the divot was sufficiently obvious to impart constructive notice, it constitutes a legal conclusion that is at odds with what we have defined as constituting an obvious defect in an alley; as such, it cannot create a triable issue of fact. (See *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701,

21

705 ["the fact that a witness can be found to opine that . . . a condition constitutes a significant risk and a dangerous condition does not eliminate this court's statutory task . . . of independently evaluating the circumstances"]; see generally, *Issakhani, supra,* 63 Cal.App.5th at p. 934 ["an expert's opinion" on "the meaning . . . of a legislative enactment" "is an inadmissible legal conclusion"]; *Spillane v. Workers' Comp. Appeals Bd.* (1969) 269 Cal.App.2d 346, 351 ["An expert's opinion . . . which assumes an incorrect legal theory, cannot constitute substantial evidence . . ."]; *Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334, 348 ["expert offer[ing] legal conclusions as to ultimate facts in the guise of an expert opinion" may be disregarded].)  Plaintiff's second expert opined that the City's mostly "reactive" system for inspecting and repairing its alleys was "inherently deficient." But the adequacy of the City's inspection program is irrelevant in this case because, as we have held, the divot was not sufficiently obvious to impart constructive notice; thus, even the most robust inspection program would not have imparted constructive notice. (Accord, *Heskel, supra,* 227 Cal.App.4th at pp. 318-319 [where defect was not obvious, fully reactive inspection plan did not impart constructive notice].)  Plaintiff points us to *Rowan v. San Francisco* (1966) 244 Cal.App.2d 308, but the sidewalk defects in that case—namely, several holes in the sidewalk ranging between .75 to 1.5 inches in depth—were obvious enough to have imparted constructive notice had the city bothered to inspect the sidewalk at issue in the nine years prior to the plaintiff's accident (*id.* at pp. 311-316 & fn. 1).  Again, alleys are different.

22

**DISPOSITION**

The judgment is affirmed.

**<u>CERTIFIED FOR PUBLICATION</u>.**

_____, J.
HOFFSTADT

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.
CHAVEZ

23